In the Matter of BETHLEHEM STEEL COMPANY, INC., Petitioner, against LAZARUS JOSEPH, as Comptroller of the City of New York, Respondent.

First Department, May 4, 1954.

*Albert R. Connelly* of counsel (*Hoyt A. Moore, George G. Tyler* and *Albert Rosenblum* with him on the brief; *Cravath, Swaine & Moore,* attorneys), for petitioner.

*Morris L. Heath* of counsel (*Stanley Buchsbaum* with him on the brief; *Adrian P. Burke, Corporation Counsel,* attorney), for respondent.

COHN, J. This is a proceeding under article 78 of the Civil Practice Act to review a final determination made by the comptroller of the City of New York, after a statutory hearing, assessing petitioner with sales and use taxes in the sum of $498,482.33, inclusive of penalties and interest, covering the period from January 1, 1941, through June 30, 1943.

Petitioner seeks an order adjudging that the cost of materials it furnished in repairing vessels pursuant to contracts with the United States Maritime Commission (hereafter called Commission) and with the Navy Department of the United States (hereafter called the Navy) is exempt from New York City sales and compensating use taxes; and prays for an annulment of the comptroller's determination assessing petitioner with the taxes.

By statute, sales of tangible personal property to Federal agencies are exempt from taxes (Administrative Code of City of New York, § N41–2.0, subd. b, par. 2; Comptroller's Regulations, art. 41, filed with the city clerk Dec. 29, 1938). Article 41 provides in part that " Receipts from sales and services to or by the * * * federal government for governmental or public purposes are not taxable." Concededly, the Commission and the Navy are agencies of the Federal Government, and, admittedly, sales of materials to these branches of the United States Government for governmental purposes are not taxable.

Petitioner is engaged in the business of building, altering, and repairing seagoing vessels. In 1941, it entered into eight master contracts with the Commission and four master contracts with the Navy for the repair of certain vessels. One contract received in evidence is typical of the eight master ship repair contracts with the Commission and the four with the Navy. Each of these master contracts sets forth the price to be paid for labor and, in addition thereto, the price to be paid for materials furnished in ꞌconnection with the repair work.

Contracts with the Commission provided that the Commission was to pay 110% of cost to petitioner of ᵈirect material. Those with the Navy provided that the Navy was to pay the actual cost to petitioner of direct material and in addition thereto a sum not in excess of 10% of materials cost; amounts calculated on the basis of rates specified with respect to labor to be performed were also stated. Obviously, if petitioner had been required to pay a city's sales tax or a use tax upon materials it supplied to the United States Navy and to the United States Maritime Commission, such tax wouldꞏhave been added to the cost of the materials, and petitioner would have been entitled to collect from these agencies of the Federal Government 110% of such cost with taxes included as part of the cost to petitioner. If this method of operation had been employed, it would have resulted, contrary to the express intent of our statute, in requiring the Federal Government, upon materials purchased by it, to pay to the City of New York a sales tax and

a use tax. Though the fact that the economic burden of a tax is passed on to the United States does not make it a tax upon the United States (*Alabama* v. *King & Boozer,* 314 U. S. 1, 9) where, by agreement the materials are sold separately to agencies of the United States Government no tax under the laws of this State may be collected. Who, in any particular transaction is the ultimate purchaser within the meaning of State law and " who is responsible under its law for payment to the state of the exaction " is for the particular State to determine. (*Kern-Limerick, Inc.,* v. *Scurlock,* 347 U. S. 110, 121.)

Under the comptroller's regulations, promulgated on December 29, 1938, which have the force and effect of statute, and of which we must take judicial notice (Administrative Code, § 982-8.0) where the contractor for the alteration or repair of tangible personal property agrees to furnish the materials and supplies at a fixed price or at the regular retail price and to render services either for an additional agreed price or on the basis of time consumed, the contractor's sales to his customer is a sale at retail. In other words, the contractor's customer, not the contractor, is the final purchaser of the materials, with the result that the contractor's customer, not the contractor, is liable for the retail sales tax and " the contractor is required *to collect* the tax thereon from such person, as the sale to the contractor's customer is a sale at retail ". This rule is set forth in article 96 of the comptroller's regulations, relating to the alteration or repair of personal property, as follows:

" *Article 96.*— Frequently, materials and supplies are consumed in improving, altering or repairing tangible personal property of others. The instances are innumerable. Automobiles, ships, boats, fur coats, other articles of clothing, watches and jewelry, are but a few of the kinds of tangible personal property frequently improved, repaired or altered. Contracts for such alteration, improvement or repair are of two kinds:

" (a) Those in which the contractor agrees for a lump sum to furnish the materials and supplies and necessary labor or services, and (b) Those in which the contractor agrees to furnish the materials and supplies at a fixed price or at the regular retail price and to render the services either for an additional agreed price or on the basis of time consumed.

" When a contractor uses materials and supplies in carrying out such a lump sum contract, he becomes the consumer thereof. The sale to him is to a final purchaser and he is required to pay the tax to his vendor. *Where the contract calls for the sale of*

*the materials and supplies to a person at an agreed price sepa-*
*rate from the charge made for labor or service, the contractor is*
*required to collect the tax thereon from such person, as the sale*
*to the contractor's customer is a sale at retail."* (Emphasis
ours.)

The general rule, as set forth in article 96, is given specific
application in article 81 of the comptroller's regulations, which
relates to the improvement, alteration and repair of ships.
Article 81 provides as follows:

" *Article 81.*— Persons engaged in the business of improving,
altering and repairing ships on a lump sum basis are required
to pay the tax upon all sales of tangible personal property made
to them and used in connection with such repairs. They are the
retail customers and do not purchase tangible personal property
for resale when performing contracts on a lump sum basis.

" However, if such persons, in connection with the repair
work charge a fixed or retail price for the tangible personal
property used in the repair work and an additional sum for the
services, *they are required to collect the tax upon the selling
price of the property and not for the charge made for the
services."* (Emphasis ours.)

Petitioner submits that its contracts with which we are con-
cerned were not bottomed on a lumped sum basis, but were
" time and materials " contracts within the meaning of articles
81 and 96 of the comptroller's regulations, in that all such con-
tracts called " for the sale of the materials and supplies to a
person at an agreed price separate from the charge made for
labor or service." Thus, it is argued, the materials which
petitioner purchased and supplied to perform its contracts,
under the comptroller's own regulations in existence when these
contracts were executed, are deemed not to have been consumed
by petitioner but to have been resold by it as tangible personal
property to the Commission or to the Navy.

Whenever the yard department of petitioner needed a par-
ticular material to effect a certain repair or alteration, a pur-
chase requisition was issued upon the basis of which petitioner's
purchasing department issued a purchase order to a vendor to
supply the material. Such purchase orders bore " Resale
Exemption Certificates ", which informed the vendor that the
materials were being sold to petitioner for resale. When the
work on the vessel was completed, separate labor and material
charges were assembled and billed to the Commission in con-
formity with the contracts. Similar procedure was pursued in

connection with Navy contracts. Both paid petitioner on the basis of the labor performed and material purchased regardless of whether the material was incorporated in the ship. The materials furnished by petitioner in performing all contracts were either taken from stock or purchased directly from outside vendors. No labor charge was ever included in the cost of direct purchases of material.

It is the contention of petitioner that the materials thus furnished by it in the repair or alteration of vessels pursuant to its contracts were not consumed by petitioner, but were in fact resold by it as tangible personal property to the Commission or to the Navy, from whom petitioner by statute was not permitted to collect a tax.

The Commission and the Navy contracts herein all provided for the transfer of title to the materials from petitioner to the Commission and the Navy, respectively, upon the happening of specified events. Thus, the typical contract with the Commission provides in article XVIII thereof, in part, as follows: "ARTICLE XVIII. *Title.* As payments are made on account of work and materials, whether or not incorporated in the vessel or its equipment as a part thereof, such work and material shall immediately become the sole property of the owner of the vessel ".

The testimony adduced before the comptroller establishes that petitioner was paid on the basis of material purchased regardless of whether the material was incorporated in the ship. As such payments were made, there was a transfer of title to the materials from petitioner to the Commission or to the Navy for a consideration.

We are of the view that there was a " sale " of materials by petitioner to the Commission and to the Navy within the meaning of subdivision 5 of section N41–1.0 of the Administrative Code. It defines a sale as: " Any transfer of title or possession or both  *  *  *  in any manner or by any means whatsoever for a consideration, or any agreement therefor," with the result that the materials purchased and supplied by petitioner in performing its contracts were not the subject of a " sale at retail " to petitioner, but were sold by petitioner to agencies of the United States Government.

The comptroller of the City of New York argues however that the property used by petitioner in doing its work, and on the purchase price of which the tax has been imposed, included such materials as lumber, paint, sheet steel, steel rods and copper

rings, and that the form of invoices used by petitioner in billing the Navy and the Commission failed to disclose the amount of steel, wood, paint and other materials used; that petitioner's activities in repairing and altering ships for the Government constituted the rendition of services rather than the resale of steel, wood, paint and other materials used in the process and hence that all such materials were taxable.

Essentially, the situation reflected by the contracts under review for the repair of vessels, as petitioner urges, is the same as that presented in the everyday case involving the repair of an automobile in a New York City garage. In the typical automobile repair job, where new parts have been installed and labor has been performed, the garage's bill to the customer states charges separately for labor performed and materials furnished, with the result that the customer, not the garage, pays the retail sales tax on the price of the materials. The customer pays that tax to his vendor, the garageman, because the materials installed in the automobile, as part of the repair job, have been resold as tangible property to the customer.

Just as the garage does not pay any retail sales tax on the purchase of materials which are later furnished to its customer in connection with the repair of his automobile, so petitioner cannot be required to pay a retail sales tax on the cost of the materials purchased by it and furnished to its customers in connection with the repair or alteration of their vessels.

The materials which petitioner furnished in performing its contracts were either purchased specially from outside vendors or taken from stock as required. As to the latter, the question is whether the tangible personal property which petitioner took from its own stock and used within the city of New York was the subject of a purchase " for resale ". In the light of the statutory provisions (Administrative Code, §§ M41–16.0; M41–15.0, subd. 4; M41–15.0, subd. 2; M41–15.0, subd. 1) it is clear that the same considerations apply with respect both to the compensating use tax and the retail sales tax. Just as purchases by petitioner from outside vendors of materials furnished by it in performing its contracts with the Commission and the Navy are not subject to the retail sales tax because such materials were the subject of a " sale for resale ", so the materials taken from stock in order to perform its aforesaid contracts are not subject to the compensating use tax because such materials were the subject of a purchase " for resale ".

Moreover, an examination of the agreements, of which the contract for the repair of the S. S. *Saimaa* is a typical example, provided for the separate transfer of title to such materials as fog buoys, convoy sternlight, examination lights, dimmer switch, flag locker, flag halyards, cut-out switches, portlights, wood blackout screens, buoyancy tanks and many similar items which are specifically enumerated. Materials and supplies furnished by petitioner to the Navy and to the Commission were not incidental to the work of alterations for their total cost under the twelve contracts exceeded $11,000,000.

As to the comptroller's contention that petitioner's invoices did not contain any detailed elaboration of the charges made for material furnished because they did not itemize each and every piece of material, it appears that such detail was contained in interim monthly vouchers which were regularly audited as they were rendered. Thus, according to the testimony of the assistant to the comptroller of petitioner: '' I know what our procedure was, which was approved by the auditors as I think the Navy auditor for the area testified last time. The procedure was simply this: We knew the labor hours we had expended in the month, they were all evidenced on labor tickets, and we collected those, turned them over to the auditor, who billed them, the Navy paid them. We knew what material vouchers, vendor's invoices had been received and we collected those in one pile, added them up, billed them and the Navy auditor approved those.''

In drafting its contracts with the Commission and with the Navy during years 1940 through 1942, petitioner was entitled to rely both on definition of sale contained in the statute and on articles 81 and 96 of the comptroller's regulations which had been promulgated on December 29, 1938. All the contracts here called for the separate sale of materials and supplies '' at an agreed price separate from the charge made for labor or service ''.

To sustain his position, the comptroller appears to rely heavily upon *Matter of Mendoza Fur Dyeing Works* v. *Taylor* (272 N. Y. 275) and *Matter of Mounting & Finishing Co.* v. *McGoldrick* (294 N. Y. 104). However, in the *Mendoza* case there was not a resale to the customer of the dye used in dyeing a fur coat, and the *Mounting and Finishing* case there was not a resale to the customer of paper, wood, and glue used in mounting lithographs. These cases involved typical lump-sum contracts and the determinations there were in entire accord

with the comptroller's regulations. Moreover, the basis upon which the Court of Appeals decided these cases, namely, that under those contracts such a small amount of material was furnished that the materials were incidental to the rendition of services upon the property of another, is wholly inapplicable to this case. The following quotation from the *Mendoza* case highlights this point (p. 281): " The mere fact that some part of the product so sold to the dyer adheres to the property of another upon which its services are performed, and such part is discernible by microscopic examination, is insufficient to make the dyer a vendor of the dyes and chemicals purchased by it."

It is also urged by the comptroller that petitioner's contracts with the Navy and with the Commission were cost-plus contracts and that under such contracts there is not a resale of material to the government. He cites *Alabama* v. *King & Boozer* (314 U. S. 1) in support of that contention. However, in the *King & Boozer* case the contractor was made liable for sales taxes as the purchaser under the Alabama sales tax statute. In this case, the question is whether petitioner, the contractor, is taxable under our statutory provisions levying the New York City sales tax. Furthermore, the contracts in the present case were not cost-plus contracts. The labor and services were performed at rates fixed in the agreements and the materials were sold by petitioner to the Navy and to the Commission at 110% of their cost. The United States Supreme Court, in *Kern-Limerick, Inc.,* v. *Scurlock* (*supra*) decided on February 8, 1954, made clear that where the United States is held to be the ultimate purchaser under State law, it may not be burdened with the sales tax. The court there made the following pertinent observations (pp. 122–123):

" We find that the purchaser under this contract was the United States. Thus, *King & Boozer* is not controlling for, though the Government also bore the economic burden of the state tax in that case, the legal incidence of that tax was held to fall on the independent contractor and not upon the United States. The doctrine of sovereign immunity is so embedded in constitutional history and practice that this Court cannot subject the Government or its official agencies to state taxation without a clear congressional mandate. No instance of such submission is shown.

" Nor do we think that the drafting of the contract by the Navy Department to conserve Government funds, if that was the purpose, changes the character of the transaction. As we

have indicated, the intergovernmental submission to taxation is primarily a problem of finance and legislation. But since purchases by independent contractors of supplies for Government construction or other activities do not have federal immunity from taxation, the form of contracts, when governmental immunity is not waived by Congress, may determine the effect of state taxation on federal agencies, for decisions consistently prohibit taxes levied on the property or purchases of the Government itself."

For the foregoing reasons, we hold that the materials furnished by petitioner in performing its contracts with the Commission and with the Navy were resales to the Federal Government for governmental purposes, were not consumed by petitioner, and under the provisions of the Administrative Code and the rules and regulations of the comptroller of the City of New York the sales of such materials to agencies of the Federal Government were not taxable. The comptroller's determination should accordingly be annulled, with costs and disbursements to petitioner.

Peck, P. J., Dore, Bastow and Botein, JJ., concur.

Determination unanimously annulled in accordance with the opinion herein, with $50 costs and disbursements to the petitioner. Settle order on notice.