Breitel, J.
The issue is whether a State agency which, pursuant to statute, leases apartments in a State-aided but otherwise private project in order to sublease them with rental subsidies to low-income tenants, may, without explanation, refuse to renew a tenant’s sublease. Where State involvement is so dominant^ it may not be arbitrary or capricious. Petitioners, subtenants, although they do not have a “right” to renewal of their subleases, may not be denied renewal without rational cause. Consequently, they should have an opportunity to be heard in order to explain or negative the purported cause for denial.
The over-all apartment project was State assisted, partially tax-exempt, constructed and operated by a State-supervised, private, limited profit housing company under the so-called Mitchell-Lama Act (L. 1961, ch. 803; Private Housing Finance Law, §§ 10-37). Although the capital structure of the project owner is not disclosed, the owner could, under the Mitchell-Lama Act, secure State or municipal loans (§§ 22-23). The State must approve the maximum rental rate fixed before construction and may, under certain circumstances, vary the rental rate (§ 31). Under section 44-a, the New York State Housing Finance Agency leased 20% of the project apartments at the standard rental fixed for all tenants, less adjustments for additional tax exemption allowed because the 20% portion is treated as if it were public housing (§ 33, subd. 2; § 44-a, subd. 1). It sublet these apartments at a lower rental to low-income tenants such as petitioners. Thus, petitioners obtained an apartment by sublease from the State agency at a rental of $133.68 per month and the State agency paid $203.50 per month to the landlord. The State agency made up the difference between the petitioners’ rental and the rental the State agency paid as lessee. The sublease to petitioners was of three years’ duration. For insufficiently disclosed reasons the State agency *318 refused to renew, although it is stated that the refusal was at the request of the project owner.
The short of the matter is that petitioners are direct subtenants of the State. The rights of tenants directly renting from the project owner, whatever those rights may be, are not at issue. The State, through the State agency, is petitioners’ only lessor. Petitioners are entitled to the same treatment as other individuals who are the direct subjects of State action, namely, the assurance, implemented by the right to a hearing which need consist of no more than an opportunity to deny or explain, that the State has not acted arbitrarily or capriciously. The test is the limited one of arbitrariness and does not involve a full evidentiary hearing or the full scope review of administrative quasi-judicial action which must be supported by substantial evidence (see Matter of Colton v. Berman, 21 N Y 2d 322, 329). It is well established that State action in connection with the granting or withholding "óf services or interests, even if normally extended by private enterprises not subject to regulation, may not be exercised arbitrarily (e.g., Matter of Vinson v. Greenburgh Housing Auth., 29 A D 2d 338, 340-341, affd. 27 N Y 2d 675; cf. Thorpe v. Housing Auth., 386 U. S. 670; Holmes v. New York City Housing Auth., 398 F. 2d 262, 264—265; Ruffin v. Housing Auth. of New Orleans, 301 F. Supp. 251, 253-254).
That the State leases rather than owns the apartments it sublets is of no significance. A post office would be no less a government activity because occupying rented rather than owned premises.
This should dispose of the .matter. However, even where direct State operation is not involved but only supportive or interrelated State action, arbitrariness is forbidden. Thus it was held in Burton v. Wilmington Parking Auth. (365 U. S. 715, 725) that where the State “has so far insinuated itself into a position of interdependence ” with a program or project, the program or project “ cannot be considered to have been so ‘ purely private ’ as to fall without the scope of the Fourteenth Amendment.” Providing low rental housing for persons with low income is a State concern (see N. Y. Const., art. XVIII; Private Housing Finance Law, §§ 11, 41). The project owner received tax exemption, and its activities were, pursuant to *319 statute, overseen by the State. The conclusion of State involvement is all the greater where the State’s rental, which to begin with was under a State-established ceiling, was decreased by an additional tax exemption because the subleasing program is treated for such purposes as public housing (§ 33, subd. 2; § 44-a, subd. 1). Moreover, as noted, the sublease is granted or withheld by the State, the State sets the petitioners’ rental and makes up the difference in State funds between the petitioners’ rental and the State’s. The ingredients of State action are remarkable and multiple, indeed overwhelming.
Accordingly, the order should be reversed, with costs, and the petition granted to the extent of remanding the matter to the State agency to give the petitioners a limited hearing after advising them of the reasons for refusing to give them a renewal lease.