■ LEGAL AID SOCIETY, Respondent, v BENJAMIN WARD, as Commissioner of Correction, Appellant. In the Matter of NAOMI BURNS et al., Respondents-Appellants, v BENJAMIN WARD, as Commissioner of Correction, et al., Appellants-Respondents. — Judgment, Supreme Court, New York County (Maresca, J.), entered January 26, 1982 granting the petition of respondent, the Legal Aid Society, to restore access to city correctional facilities to its employee, Thomas McCreary, is reversed, on the law and the facts and in the exercise of discretion, without costs, and the petition dismissed. Judgment, Supreme Court, New York County (Maresca, J.), entered March 5, 1982 granting the petition of respondent, Thomas McCreary, to restore access to petitioner to city correctional facilities, is reversed, on the law and the facts and in the exercise of discretion, without costs, and the petition dismissed. The facts are sufficiently set forth in Justice Asch's memorandum. We agree that the Board of Correction did not have power to render an appellate decision binding on the commissioner as to the granting of an access pass to Mr. McCreary. Under subdivision e of section 626 of the New York City Charter, the board is directed to "establish minimum standards" for the care, custody, etc., of persons held or confined under the jurisdiction of the Department of Correction. The power to establish minimum standards is a quasi-legislative power and does not imply the power of the Board of Correction to set itself up as an appellate tribunal to rule on specific cases. Subdivision f of section 626 of the New York City Charter directs the board to "establish procedures for the hearing of grievances". But even this on its face appears to be a quasi-legislative power rather than a judicial power, i.e., the power to establish a procedure rather than itself conduct that procedure. We note that the very next sentence, which gives the board power to conduct hearings, provides only that the board may "make recommendations and submit reports of its findings to the appropriate authorities", an advisory rather than a quasi-judicial function. Further, the power to establish procedures for hearing of grievances is expressly stated to be griev-

ances "(1) by or on behalf of any person held or confined under the jurisdiction of the department or (2) by any employee of the department." (New York City Charter, § 626, subd f.) This grievance is not on behalf of either a person held or confined under the jurisdiction of the department, or by an employee of the department. We reject the Legal Aid Society's contention that their unidentified clients are somehow parties to this grievance procedure. On the face of the statute, the statutory powers of the Board of Correction do not appear to cover the question of which employees of the Legal Aid Society shall be recognized and given general access passes by the Commissioner of Correction. Despite the somewhat inconsistent conduct of the commissioner in telling petitioners of the grievance procedure, we think the matter is too important to be determined on the basis of some kind of estoppel against the commissioner. We conclude that at least in this area the decisions of the Board of Correction can have no more than advisory force. The issue thus becomes whether the commissioner's determination was arbitrary and capricious. We think it was not. As an original proposition the Commissioner of Correction charged with the security of the institutions under his jurisdiction cannot be said to be acting arbitrarily and capriciously in refusing a general access pass to a man who had been convicted in Missouri of an attempt to murder a police officer, who was sentenced to 20 years' imprisonment on that conviction, who is now on parole on that conviction, and who at the time of his arrest in the Missouri incident was in a car in which there was found the stolen service revolver of a murdered New York police officer. The question then is whether the provisions of the minimum standards render the commissioner's action arbitrary and capricious. Read literally, the minimum standards do seem to forbid the revocation of a general access pass to a person in petitioner McCreary's position. Thus section 9.5 (b) of the minimum standards provides that a pass shall not be denied based upon any of the items listed in section 10.8 (a); one of the items so listed is the prospective visitor's criminal record. Section 9.5 (c) provides that the revocation of a pass must be made pursuant to the procedural requirements of section 10.8 (b) (i), among others, which provides: "This determination must be based on specific acts committed by the visitor during a prior visit to an institution that demonstrate his or her threat to the safety and security of an institution, or on specific information received and verified that the visitor plans to engage in acts during the next visit that will be a threat to the safety or security of the institution." It may well be that the drafters of the standards did not contemplate a situation such as is here presented, and that, therefore, the standards should not be read literally. For example, do the standards sensibly mean that if a man has been convicted of engineering a large-scale escape from a prison, the commissioner cannot consider that fact in determining whether to issue a blanket access pass to him? We think the more sensible interpretation of the standard is that the fact that the applicant for the access pass has some kind of a criminal record cannot *ipso facto* disqualify him in all cases. It may well be that many of the persons incarcerated under the jurisdiction of the Commissioner of Correction have as close relatives or friends people who have at one time or another run afoul of the criminal law, but in respects which do not appear to the commissioner to endanger the security of the institution; in such event, the applicant's criminal record should not bar a visitor's pass. But in the present case, we cannot say that the commissioner was arbitrary and capricious in his view that the granting of a blanket access pass to a person of Mr. McCreary's record may compromise the security of the institution, or that the minimum standards forbid the commissioner from considering that conviction and the underlying facts. Even if the commissioner's revocation of the pass may be said to be a violation of the

minimum standards, it does not follow that petitioners are entitled to an order under CPLR article 78. This proceeding is in the nature of mandamus. Mandamus is an extraordinary remedy. "A mandamus order may issue only for the enforcement of a clear legal right; and even after such right has been established, the court must determine whether, in the exercise of a sound discretion, it should grant or withhold the order." (*Matter of Durr v Paragon Trading Corp.*, 270 NY 464, 469.) "Moreover, even where a petitioner's legal right to the relief sought is clearly established, issuance of a writ of mandamus is a matter reserved for the sound discretion of the court". (*Matter of Sheerin v New York Fire Dept., Arts. 1 & 1B Pension Funds,* 46 NY2d 488, 496.) We think we are justified, in the exercise of our discretion, in declining to issue an order of mandamus to compel the Commissioner of Correction, charged with the security of the institutions under his control, to restore a general access pass to a particular person, where the commissioner in good faith and on reasonable grounds believes that the restoration of such a pass compromises or endangers the security of those institutions. For the reasons stated by Justice Asch, we agree that attorney's fees were properly denied to both petitioners, Burns and McCreary. Concur — Kupferman, J. P., Sullivan, and Silverman, JJ.

Asch, J., dissents in a memorandum as follows: The appellant commissioner determined that both Thomas McCreary and Naomi Burns, employees of the Legal Aid Society, posed security risks and should be excluded from city correctional facilities. The respondent, the Legal Aid Society, asserted that the commissioner's determinations were in violation of "Minimum Standards" promulgated by the Board of Correction and filed an administrative appeal with the board. On December 17, 1980, the board rendered an opinion in which it concluded that the minimum standards were "promulgated in rules and regulations [and are] binding on the Department of Correction." The board determined that the department had acted in contravention of the minimum standards when it revoked the access passes of Burns and McCreary (a) on the basis of their political associations and McCreary's criminal record, and (b) without making a showing that the two legal assistants had committed "specific acts" demonstrating that they posed a "threat to the safety and security" of a city correctional facility. On June 25, 1981, Burns and McCreary commenced a CPLR article 78 proceeding, seeking judgment directing the commissioner to implement the decision of the board and reinstate their access to city correctional facilities. The petition also alleged that the violation of the constitutional due process standards represented a violation of section 1983 of title 42 of the United States Code which, in turn, entitled the petitioners to counsel fees under section 1988 of title 42 of the United States Code. On June 25, 1981, the Legal Aid Society also commenced an article 78 proceeding against the commissioner seeking implementation of the board decision and restoration of access to Burns and McCreary. Special Term, in an opinion in the Legal Aid Society proceedings, issued on December 22, 1981, granted the application. This opinion was adopted by reference in the Burns and McCreary proceeding on January 11, 1982. Judgment was entered in the Legal Aid Society proceeding on January 20, 1982 and in the Burns and McCreary proceeding on March 5, 1982. No reference was made by Special Term to the request for counsel fees. In response to the decisions of Special Term, the commissioner withdrew his objections to Burns and reinstituted her institutional pass. The commissioner appeals from that part of the judgments which directed restoration of access to McCreary. McCreary and Burns cross-appeal from so much of the judgment in their proceedings as failed to grant them counsel fees. The appeals in these matters were consolidated by this court's

order of April 9, 1982. Subdivision e of section 626 of the Charter of the City of New York empowers the Board of Correction to "establish minimum standards for the care, custody, correction, treatment, supervision, and discipline of all persons held * * * and * * * promulgate such minimum standards in rules and regulations". Pursuant to subdivision e of section 626, on February 14, 1978, the board adopted the minimum standards for New York City correctional facilities. As validly enacted regulations, the minimum standards have the force and effect of law. (See, e.g., *Matter of Bethlehem Steel Co. v Joseph,* 284 App Div 5.) After the initial denial of the access passes by the commissioner, Legal Aid and the two legal assistants invoked the appellate procedures provided for in section 10.8 (e) of the minimum standards. After full consideration, the board found that the commissioner failed to meet the substantive requirements set forth in sections 9.5 (c) and 10.8 (a) of the minimum standards. At the time of the board's decision, section 9.5 (c) read, in pertinent part: "[an access pass] may be revoked if specific acts committed by the legal assistant during a visit to an institution demonstrate his or her threat to the safety and security of that institution." Section 10.8 (a) read, in pertinent part: "Visiting rights shall not be denied, revoked, limited or interfered with based upon a prisoner's or prospective visitor's * * * (vi) political beliefs * * * (viii) criminal record". The minimum standards adopted by the board include the provision for appeals from determinations with respect to access, from the department to the board (minimum standards, § 10.8 [e]). Although not necessary for our determination in the instant case, it is my judgment that the Board of Correction did not, and does not, have authority to render appellate decisions which bind the commissioner in specific cases involving access by legal aides. There is no grant of any appellate jurisdiction, or of the power to create it, contained in the board's enabling legislation, section 626 of the New York City Charter, or elsewhere. In addition, there is no language in the section which can be interpreted to confer appellate jurisdiction upon the board. Nor can any such power be implied as a necessary concomitant of, or as essential to, the exercise of the powers conferred by section 626. I do not pass upon the wisdom of the provisions of the minimum standards promulgated by the board. Consideration initiated as a result of these proceedings may well impel the board to reconsider both its minimum standards and its assertion of appellate jurisdiction. Until such action is taken, however, the commissioner and department were bound by the criteria prescribed in section 10.8 (a) and could not meet the "specific act" standard of section 9.5 (c). Regulations promulgated by an administrative agency have the force and effect of law. (2 NY Jur 2d, Administrative Law, § 101, p 148 *et seq.*) Hence, the commissioner's determination in violating the board's regulations was arbitrary and capricious. The construction that the majority of this court seeks to impose upon the sections cited above to justify the commissioner's actions is simply not warranted by the criteria set forth in the minimum standards. The words are clear on their face. Although not binding on this court, what better indication do we have that the language of sections 9.5 (c) and 10.8 (a) of the minimum standards mean exactly what they say, than the fact that the board which promulgated the regulations decided that the commissioner's action violated the language of their own regulations? The remedy for the hypothetical case which the majority projects lies in an amendment of the language of the regulations. The authority to do this, however, is not vested in the Justices of this court but in the Board of Correction. Attorney's fees were properly denied petitioners Burns and McCreary pursuant to section 1988 of title 42 of the United States Code. In order to recover attorney's fees pursuant to section 1988, the plaintiff must state a claim pursuant to section 1983 of title 42 of the United States Code, seeking to vindicate constitutional or civil rights. Peti-

tioners do not challenge the procedural due process afforded them herein. Rather they allege that the commissioner's decision to exclude them was arbitrary in light of the minimum standards, and that State law requires that the commissioner abide by the Board of Correction's findings and determination. These are purely questions of State law and, as such, do not state a claim pursuant to section 1983. (See *Phillips v Bureau of Prisons*, 591 F2d 966.) Accordingly, the judgment of the Supreme Court, New York County (Maresca, J.), entered January 26, 1982 granting the petition of respondent, the Legal Aid Society to restore access to city correctional facilities to its employee, Thomas McCreary, should be affirmed, and the judgment of the Supreme Court, New York County (Maresca, J.), entered March 5, 1981, granting the petition of respondent, Thomas McCreary, to be restored access to city correctional facilities should also be affirmed.