OPINION OF THE COURT
Phyllis Gangel-Jacob, J.
This article 78 proceeding seeks a judgment annulling a *577 determination that petitioner is not eligible for an apartment in the building located at 41 Convent Avenue, New York, N. Y. (the Building); ordering that the petitioner’s application for an apartment be granted; ordering respondents Commissioners of Department of Housing Preservation and Development (HPD) and Division of Alternative Management Programs (DAMP) to promulgate written guidelines concerning the renting of vacant apartments in DAMP-administered buildings; and staying respondents from renting any apartments that are now vacant pending determination of this motion.
Respondents New York City (City), HPD and DAMP (collectively, the Municipal Respondents) cross-move for an order dismissing the petition as to them in its entirety and denying petitioner’s motion for a preliminary injunction.
Respondents 41 Convent Avenue Tenants’ Association (Tenants’ Association) and Sophie Johnson oppose the petition and petitioner’s request for a preliminary injunction on the ground, among others, that petitioner is not financially able to pay the required rent on an apartment in the Building and thus is not eligible for an apartment in the Building.
Petitioner Alvis Johnson resides with her mother and two adult brothers at 41 Convent Avenue, apt. 2A, New York, New York. She claims she wants to move because her mother’s apartment does not provide sufficient space to accommodate her. Petitioner is a recipient of public assistance.
HPD is the agency responsible for administering housing acquired through in rem tax foreclosures by the City. DAMP, a division of HPD, oversees the management of certain of these in rem buildings by private organizations under an alternative management program known as the Tenant’s Interim Lease program (TIL). Under TIL, tenants are given responsibility for managing their own buildings with the goal to eventually purchase their buildings from the City as low-income cooperatives. The purpose of the TIL program is to provide low- and moderate-income tenants with the opportunity to own affordable housing.
Respondent Tenants’ Association is a participant in TIL in respect of the Building. As such the Tenants’ Association entered into an agreement with the City, commonly referred to as an "Interim Lease”, whereby the Tenants’ Association agreed to perform general management services for the Building. Through its tenant selection committee, the Tenants’ *578 Association rents vacant apartments in the Building to tenants. Persons accepted as tenants must entér into written leases with the Tenants’ Association. Each and every such lease must be approved by HPD and is subject to the terms of the Interim Lease. Under the TIL program HPD provides a building coordinator who monitors the financial requirements of the Tenants’ Association and assists in the solution of tenant problems so the Building may be in compliance with the provisions of the Interim Lease and the TIL program.
In October 1987 petitioner submitted a written application to the Tenants’ Association for the next available apartment in the front of the Building. She was screened by the Tenants’ Association screening committee. Petitioner was not offered an apartment notwithstanding that a number of apartments in the Building had become vacant. She alleges that two of the vacant apartments were given to friends or relatives of HPD employees and committee members, respectively. She alleges she was told by Ms. Samuels, a member of the screening committee, that she (petitioner) was not considered eligible for an apartment because she is a single woman.
In opposition, the Tenants’ Association claims that petitioner cannot afford to pay the rent on an apartment in the Building because she is on public assistance. Petitioner received no written statement declaring that her application was rejected or explaining why she was not chosen for any of the vacant apartments.
On December 18, 1990 the court ordered a stay of rental of apartment 3K pending hearing of this proceeding.
The Municipal Respondents assert that under the TIL program they are not involved in the management of the Building and the acceptance of prospective tenants by the Tenants’ Association and petitioner thus has not established a recognizable due process claim against the City that would require it to promulgate guidelines for tenant screening committees. Notwithstanding that the TIL program is transitory in nature, however, the court finds that the City is so entwined with the conduct of the tenants’ associations under that program as to constitute significant and meaningful governmental participation triggering constitutional due process guarantees (157 W. 123rd St. Tenants Assn. v Hickson, 142 Misc 2d 984; see generally, Matter of Fuller v Urstadt, 28 NY2d 315, 318). In this regard the court notes that the Tenants’ Association is controlled by HPD. The Tenants’ Association is required to *579 submit monthly reports to HPD; HPD may also inspect the Building’s leases, records and bills without prior notice to the Tenants’ Association; the Tenants’ Association is required to maintain a bank account "established in a manner satisfactory to HPD and shall grant HPD the authority, acting alone and at any time to withdraw funds from the account or to prohibit the withdrawal of funds from the Account by [the Tenants’ Association] or its designee”. HPD’s regulatory control of this Building is not limited to fiscal matters; HPD reserves the right to initiate holdover proceedings to remove problem tenants and it is required that HPD approve each and every rental agreement.
"As a general rule, where the State (or city) ' "has so far insinuated itself into a position of interdependence” with a [housing] program or project, the program or project "cannot be considered to have been so 'purely private’ as to fall without the scope of the Fourteenth Amendment” ’ ” (157 W. 123rd St. Tenants Assn. v Hickson, 142 Misc 2d 984, 985, supra, quoting Matter of Fuller v Urstadt, 28 NY2d 315, 318, supra). The court finds that HPD’s involvement with the TIL program is sufficient to constitute State action and the Municipal Respondents’ motion to dismiss this proceeding as against them on the grounds that the TIL program does not rise to the level of HPD involvement and does not require the promulgation of regulations by HPD is denied.
HPD is bound by statute and the terms of its own Interim Lease agreements not to discriminate against tenants or prospective tenants on the basis of marital status. For example, it is an unlawful discriminatory practice: "[t]o discriminate against any person because of such person’s race, creed, color, national origin, sex, age or marital status in terms, conditions or privileges of any publicly-assisted housing accommodations or in the furnishing of facilities or services in connection therewith.” (Administrative Code of City of New York § 8-107 [3] [b].) The term "publicly-assisted accommodations” specifically includes "[h]ousing operated by housing companies under the supervision of the state commissioner of housing and community renewal, or the department of housing preservation and development” (Administrative Code § 8-102 [11] [b]).
Furthermore, HPD requires lessees of in rem housing to adopt nondiscriminatory practices. The Interim Lease provides that "the lessee will not discriminate against any tenant or prospective tenant because of lawful occupation, marital status or having children”.
*580 Petitioner has a clear statutory right to be considered for in rem housing and to have the determination of her eligibility based on nondiscriminatory factors. Marital status cannot be a factor in selection. Furthermore the Tenants’ Association is bound to follow its contractual obligation.
Petitioner maintains that respondents have rejected her application because she is a single woman. Petitioner bases her claim on comments allegedly made to her by a member of the Tenants’ Association selection committee. In opposition, the Tenants’ Association asserts the basis of its determination was petitioner’s financial status, and points out that petitioner admits a vacant apartment was rented to another single woman. In support of its position that petitioner’s marital status was not a factor in its determination, the Tenants’ Association has submitted three of petitioner’s applications, one of which lists petitioner as married with a child.
Concerning the Tenants’ Association’s claim that petitioner’s application was rejected because of her inability to pay the required rent as a recipient of public assistance, petitioner contends that any difference between her public assistance grant and the cost of an apartment would be paid by her brother who has agreed to act as surety. She argues that since she will be able to pay the full rent, her application may not be rejected on economic grounds.
The Interim Lease limits rental of TIL apartments to families of "low-moderate income as defined by Federal Section 8 Existing Income Guidelines”. The Tenants’ Association may not "discriminate against prospective tenants on the basis of their receipt of or eligibility for housing assistance under any Federal, State or local program”. Hence, a Tenants’ Association must be careful not to reject appropriate applicants that the TIL program was designed to assist.
Based on the conflicting papers presented, the court is unable to determine whether or not the Tenants’ Association discriminated against petitioner on the basis of her marital status or whether the Tenants’ Association acted properly when it rejected petitioner’s application and her offer to provide a surety to secure her rent payments (see, Matter of Fuller v Urstadt, 28 NY2d 315, 318, supra). HPD and the Tenants’ Association under its control are specifically bound to follow the Administrative Code and Interim Lease provisions relating to nondiscriminatory practices. Petitioner has shown that she may have been discriminated against on the *581 basis of marital status and/or the source of her income in violation of Administrative Code § 8-107 (3) (b) and the Interim Lease, respectively. "State action in connection with the granting or withholding of services or interests, even if normally extended by private enterprises not subject to regulation, may not be exercised arbitrarily” (Matter of Fuller v Urstadt, supra, at 318). To insure that petitioner’s application is considered in a proper manner, therefore, that branch of petitioner’s application for an order annulling the determination of the Tenants’ Association and awarding an apartment in the Building to her is granted to the extent of remanding this matter to the Tenants’ Association for reconsideration of petitioner’s application, including her present financial situation and her offer of a surety. Petitioner shall provide the Tenants’ Association with such documentation and information reasonably required to aid the Tenants’ Association selection committee in determining her application, upon written request to petitioner therefor. The tenant selection committee shall provide petitioner with a written determination of its decision which shall clearly and precisely state, in case it rejects petitioner’s application, the reason or reasons underlying its decision.
In respect of petitioner’s application for a preliminary injunction enjoining the Tenants’ Association from renting all vacant apartments during the pendency of this proceeding, a preliminary injunction "may be granted in any action where it appears that the defendant threatens or is about to do, or is doing or procuring or suffering to be done, an act in violation of the plaintiff’s rights respecting the subject of the action, and tending to render the judgment ineffectual” (CPLR 6301). In order to be granted a preliminary injunction, the movant "must establish a likelihood of success on the merits, irreparable injury absent a granting of the injunction, and a balancing of the equities in its favor” (Doe v Axelrod, 136 AD2d 410, 414, affd as mod 73 NY2d 748). The court may then exercise its discretion in imposing injunctive relief pendente lite so as to maintain the status quo (Pilgreen v 91 Fifth Ave. Corp., 91 AD2d 565, 567).
Petitioner is entitled to be treated in a nondiscriminatory manner (Administrative Code § 8-107 [3] [b]). Petitioner’s allegation of discriminatory practices in the TIL program is an issue of serious import to a vast number of individuals that warrants a grant of a preliminary injunction to maintain the status quo (see, Doe v Axelrod, supra). If this court does not *582 issue a stay of renting and petitioner prevails, the underlying relief sought — a grant of an apartment — would be rendered moot and a judgment ineffectual. But since petitioner cannot occupy more than one apartment, a stay concerning the renting of all vacant apartments in the Building — both those currently vacant and those which may become vacant — would cause irreparable harm to the Tenants’ Association, and petitioner’s application therefor is denied. However, for the purpose of maintaining the present status quo the court hereby continues the temporary restraining order on the renting of apartment 3K pending the tenant selection committee’s reconsideration and determination of petitioner’s application.
CPLR 6313 requires the court to set an undertaking prior to granting an injunction (Catalogue Serv. v Henry, 107 AD2d 783). The court sets the amount of petitioner’s undertaking at $100, to be posted within 10 days of service of a copy of this decision with notice of entry.
Petitioner’s request that this court review respondents’ system of tenant selection and order HPD to promulgate rules is in the nature of mandamus (CPLR 7803 [1]). Mandamus is an extraordinary remedy (Legal Aid Socy. v Ward, 91 AD2d 532, 534, affd 61 NY2d 744) and an order therefor " 'may issue only for the enforcement of a clear legal right; and even after such right has been established the court must determine whether, in the exercise of sound discretion, it should grant or withhold the order’ ”.
The Municipal Respondents maintain that under Matter of Laureano v Koch (100 AD2d 192, revd as moot 64 NY2d 1105), they are not required to promulgate tenant selection rules. In Laureano the Appellate Division rejected petitioner’s argument that HPD was required to promulgate rules concerning rent increases, reasoning that the tenants did not have a legitimate expectation that their rents would be kept at regulated levels since in rem housing is exempted by statute from rent control and rent stabilization laws (supra), and that HPD’s informal procedures provided adequate due process because the informal procedures gave the tenants notice of increase and an opportunity to respond. The City later changed its position and promulgated rules, prompting the Court of Appeals to reverse the Appellate Division’s order in Laureano as moot (Matter of Laureano v Koch, 64 NY2d 1105).
Unlike the situation in Matter of Laureano v Koch (supra), where the Appellate Division found there was no legal duty *583 for the City to curtail rent increases, petitioner here has a clear legal right not to be discriminated against in publicly assisted housing accommodations (Administrative Code § 8-107 [3] [b]).
The issue then is what procedure constitutes adequate due process in tenant selection in TIL buildings. The Second Circuit has held "the existence of an absolute and uncontrolled discretion in an agency of government vested with the administration of a vast program, such as public housing, would be an intolerable invitation to abuse” (Holmes v New York City Hous. Auth., 398 F2d 262, 265). Due process requires that "selections among applications] be made in accordance with 'ascertainable standards’ ” (supra, at 265). Individuals who are not informed of their ineligibility are therefore deprived of the opportunity to seek review of the agency’s decision as provided by CPLR 7803 (3) (supra, at 265, n 4).
In the system employed by HPD, tenant selection is governed by the Tenants’ Association’s bylaws. Among other things, the bylaws, which are subject to HPD’s approval, require that a tenant selection committee be formed to solicit and review applications of prospective tenants. Vacant apartments must be advertised and applications given to all interested applicants. The selection committee is required to maintain a waiting list of qualified applicants. Eligibility is limited to persons of low and moderate income as defined in the Section 8 income guidelines.
There are no other defined procedures which clearly explain what the eligibility requirements are, or that require the Tenants’ Association to notify applicants of their status and the reason for refusal. The bylaws do not require that applicants be told what the eligibility criteria are and what documentation is required to meet those criteria. The applications used by the Tenants’ Association for the Building and submitted as exhibits to their papers in this proceeding do not list any criteria (including specification of any required documentation) or describe any notification procedure.
Based on the documents presented herein, the court finds that HPD’s informal tenant procedures do not meet even the minimum notice requirements as set out in Matter of Laureano v Koch (supra). These procedures fail to give adequate direction to the tenant selection committee leaving applicants open to discriminatory practices forbidden by Administrative Code § 8-107 (3) (b). The failure to provide notice of denial also *584 interferes with the applicant’s ability to pursue both administrative remedies or to commence an article 78 proceeding.
Given the potential for abuse in the tenant selection process and the fact that HPD may promulgate rules (see generally, NY City Charter § 1802 [6] [e]) and has been willing to promulgate rules in the past for in rem housing, the court finds it appropriate to grant that part of petitioner’s application for mandamus to the extent that HPD is directed to promulgate rules for TIL programs like that at issue in this proceeding which include provisions:
(1) clearly stating HPD’s eligibility criteria including eligible income levels;
(2) requiring that tenants and prospective tenants be notified in writing of these criteria;
(3) requiring tenants and prospective tenants to be given written notice of their status, the outcome of the selection process and the reason for denial.
Accordingly, the petition is granted to the extent that
(1) petitioner’s application is remanded to the Building’s tenant selection committee for further consideration including reconsideration of petitioner’s financial status and her ability to provide a surety;
(2) the Tenants’ Association is enjoined from renting apartment 3K upon petitioner’s deposit of an undertaking in the sum of $100 within 10 days of service of a copy of this decision with notice of entry, and until the tenant selection committee has reconsidered and determined petitioner’s application and notified her of the outcome in writing;
(3) respondent HPD is directed to promulgate rules consistent with this decision.