OPINION OF THE COURT
Javier E. Vargas, J.
For the following reasons, the motion and sur-cross motion by petitioner Westchester Gardens, L.E (landlord) for, inter alia, an order dismissing certain affirmative defenses, are denied; and the cross motion by respondent Christie Landos (tenant), to dismiss the instant nuisance holdover proceeding, is granted, and the proceeding is hereby dismissed.
Pursuant to a lease agreement and renewal commencing December 15, 2011 and expiring November 2013, tenant has resided in the subject federally subsidized Housing and Urban Development (HUD) building, known as 1015 Fox Street, apartment 502, in the Bronx, New York, owned by landlord and managed by Palladia, Inc., a nonprofit organization, which receives funding under the federal Shelter Plus Care Program, and *683 provides housing for homeless persons with disabilities, chronic substance abuse and/or AIDS and related diseases. Tenant qualified for this program because she had previously resided “in transitional or supportive housing for homeless persons originating [from] the streets or emergency shelter,” as evidenced by her HUD Homeless Status Certification. Tenant currently resides there with her two minor children and apparently with her boyfriend, Jonathan Espinal.
On January 31, 2013, landlord served upon tenant a 10-day notice of termination of her tenancy alleging that certain conduct by her and Mr. Espinal constituted a chronic nuisance and was in violation of her lease agreement, the Shelter Plus Care Program and its House Rules Rider, and asking for her surrender of the property on or before March 16, 2013. Specifically, landlord alleged several dates of loud and violent domestic disputes between tenant and Mr. Espinal almost on a monthly basis between 2011 and 2012, disrupting other tenants’ quiet enjoyment of their apartments, requiring repeated police intervention, resulting in three arrests of Espinal and the issuance of an order of protection against him in favor of a neighbor in November 2012. Relevantly, landlord described the building regulatory status in the notice of termination as “subject to Rent Stabilization Law of 1969 as amended, and that this Notice [wa]s being served upon you pursuant to Sections 2524.3 (a) and other applicable sections of the Rent Stabilization Code of the City of New York.” Tenant failed to vacate or surrender the premises on the prescribed date.
As a result, by notice of petition and petition filed March 19, 2013, landlord commenced the instant nuisance holdover proceeding against tenant to recover possession of the premises, rent arrears and reasonable costs and legal fees pursuant to RPAPL 711 (1), alleging that tenant has chronically created a nuisance and violated “the Lease Agreement, House Rules Rider and Support Services/Shelter+Care Rider” by allowing her unauthorized guest, Mr. Espinal, to engage in a persistent and continuing course of conduct that endangered, annoyed, and inconvenienced management, tenants and other occupants of the building. Like the notice of termination, landlord described the building regulatory status as only “subject to Rent Stabilization Law of 1969 as amended and . . . duly registered with the NY State Division of Housing and Community Renewal.”
After retaining Legal Services NYC-Bronx, tenant filed a verified answer dated May 9, 2013, generally denying most of the *684 allegations in the petition, interposing an affirmative defense and raising three objections in point of law, to wit: first, that the termination notice and petition fail to state a cause of action for nuisance; second, that they fail to state the legal and factual basis of this proceeding; and third, that those documents violate the Rent Stabilization Law and public policy by prohibiting tenant from having guests or roommates at her premises. The single affirmative defense alleges that Espinal was in fact himself attacked by two residents of the subject building on November 28, 2012, who were arrested and criminally charged, and that tenant obtained an order of protection against one of those residents. The following motion practice ensued.
Specifically, by notice of motion dated September 16, 2013, landlord moves for an order striking tenant’s objections in point of law and dismissing her affirmative defense on the grounds that the predicate notice and petition clearly state a cause of action for nuisance given the litany of at least 10 instances of loud, and sometimes physical, altercations between tenant and Espinal, an unauthorized guest, seven of which resulted in police intervention over a 20-month period, and that tenant has not denied the actual nuisance allegations in the petition. Landlord additionally argues that, contrary to the implication of tenant’s answer, this proceeding is not based on tenant’s permitting a roommate or unauthorized guest to remain there, but on the nuisance created by their continuous, violent and injurious conduct.
In opposition, tenant cross-moves, by notice of cross motion dated October 17, 2013, for an order dismissing the proceeding pursuant to CPLR 3211 (a), arguing that the petition fails to correctly and sufficiently plead the regulatory status of the premises in accordance to RPAPL 741 (4), and that landlord additionally failed to comply with federal procedural due process protections and with other conditions precedent to commencing this proceeding as required by the Code of Federal Regulations (CFR), 24 CFR 582.320. In support of her motion, tenant argues that landlord has failed to specify that tenant’s tenancy is not only subject to rent stabilization laws, but also to the rules and regulations of the Shelter Plus Care Program, a rental subsidy governed by the CFR and authorized by title IV of the McKinney-Vento Homeless Assistance Act (Pub L 100-77, tit iy 101 US Stat 494), as well as two additional regulatory agreements with New York City, and subject to the low income housing credit regulations. Landlord counters that its petition suf *685 ficiently identifies the regulatory status of the premises as rent stabilized, but, in the alternative, sur-cross-moves, by sur-cross motion dated January 15, 2014, for leave to amend the petition pursuant to CPLR 3025 (b) to provide a further description of the premises’ regulatory status as suggested by tenant. Landlord also argues that compliance with CFR is not a condition precedent to commencing this proceeding. This court disagrees.
RPAPL 741, which governs the contents of a petition, provides that a petition must: (1) “[s]tate the interest of the petitioner in the premises from which removal is sought”; (2) state the respondent’s interest in the same; (3) “[d]escribe the premises”; (4) state the facts upon which the proceeding is based (see Giannini v Stuart, 6 AD2d 418, 420 [1958]); and (5) state what is the relief sought (see MSG Pomp Corp. v Doe, 185 AD2d 798, 800 [1992]). These required elements have been interpreted to include a description of the rent regulatory scheme governing the premises, to such an extent that any “deliberate misrepresentation of the rent-stabilized status of a leasehold subjects a petition to strict construction as a matter of equity, subjecting the summary proceeding to dismissal” (546 W. 156th St. HDFC v Smalls, 43 AD3d 7, 11 [2007]; see U.F.H. Apts., Inc. v AEDH, NYLJ, Nov. 17, 1997 at 28, col 5 [App Term, 1st Dept 1997]). “Where, as here, the tenancy is subject to a specific form of regulation, albeit in the form of a government contract, the petition must set forth the regulatory status of the premises, because this status may determine the scope of the rights of the parties” and “enable the tenant to interpose whatever defenses are available” ("Volunteers of Am.-Greater N.Y., Inc. v Almonte, 17 Misc 3d 57, 59 [App Term, 2d Dept, 2d & 11th Jud Dists 2007], affd 65 AD3d 1155 [2009]; MSG Pomp Corp., 185 AD2d at 800; see Cintron v Pandis, 34 Misc 3d 152[A], 2012 NY Slip Op 50309[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2012]).
Applying these legal principles to the matter at bar, tenant has demonstrated that the petition contains fundamental misstatements and omissions as to the regulatory status of the subject premises. Other than stating that the premises are subject to the “Rent Stabilization Law,” the petition fails to mention any of the other federal, state and local regulatory schemes governing the same, which according to the Automated City Register Information System of the NYC Department of Finance and the lease, include the CFR rules and regulations governing the Shelter Plus Care Program of which tenant belongs (see 24 CFR 582.300), as well as two additional regula *686 tory agreements and related amendments with New York City, and the low income housing credit regulations. Landlord’s failure to particularly allege the existence of these contracts, rules and regulations appears fatal to this proceeding because neither tenant nor the court were put on notice of the laws governing the tenancy or the substantive rights involved (see City of New York v Valera, 216 AD2d 237, 237-238 [1995]). The CFR and city contracts provided tenant with certain potential defenses, and “Civil Court could not have properly adjudicated this proceeding without that contract” (Volunteers of Am.-Greater N.Y., Inc., 65 AD3d at 1157; see Villas of Forest Hills v Lumberger, 128 AD2d 701, 702 [1987]; see also MSG Pomp Corp. v Doe, 185 AD2d at 799-800). Similar to the reasons given for the dismissal of the petition in Volunteers of Am.-Greater N.Y., Inc. (65 AD3d 1155), the instant premises are also part of a federally subsidized program and subject to governmental contracts which landlord neglected to specify.
Not only is the premises’ regulatory status required, but landlord must also show its compliance with the applicable rent laws and regulations over the tenancy. As evidenced by the contracts between the City and landlord, the City is sufficiently “entwined” with the subject premises so as to constitute significant and meaningful governmental participation, triggering constitutional procedural due process guarantees (see Matter of Fuller v Urstadt, 28 NY2d 315, 318-319 [1971]; 512 E. 11th St. HDFC v Grimmet, 181 AD2d 488, 489 [1992], appeal dismissed 80 NY2d 892 [1992]). Specifically, the CFR provides that tenants participating in the Shelter Plus Care Program should be “terminated only in the most severe cases,” and only after a certain “formal process” complying with due process of law (24 CFR 582.320 [a], [b]), given the last resort nature of this shelter program. This process must consist, at a minimum, of: (1) written notice to the tenant of the reasons for termination; (2) an independent review of the decision, wherein the tenant is given an opportunity to present written or oral objections, by a person other than the one who made the initial termination decision; and (3) a prompt written notice of the final decision (24 CFR 582.320 [b] [l]-[3]; see 512 E. 11th St. HDFC v Grimmet, 181 AD2d at 489). The petition here does not allege that landlord followed these CFR procedures prior to commencing the instant proceeding. Instead, tenant’s tenancy was undisputedly terminated via the January 2013 notice of termination without any additional due process. “Because equity abhors forfeitures *687 of valuable leasehold interests, courts have required strict compliance with the termination provision of leases” (Jacobson v Raff, 30 Misc 3d 143[A], 2011 NY Slip Op 50323[U] [App Term, 2d Dept, 9th & 10th Jud Dists 2011], quoting Metropolitan Transp. Auth. v Cosmopolitan Aviation Corp., 99 AD2d 767, 768 [1984]). Landlord is, therefore, in unambiguous breach of its agreements, rendering the petition defective, and dismissal warranted for this reason as well.
Contrary to landlord’s contentions, neither Coalition Houses L.P. v Bonano (12 Misc 3d 146[A], 2006 NY Slip Op 51516[U] [App Term, 1st Dept 2006]), nor Siedlecki v Doscher (33 Misc 3d 18 [App Term, 2d Dept, 2d, 11th & 13th Jud Dists 2011]) call for a different conclusion. Coalition Houses involved a nonpayment proceeding where the landlord made a posttrial motion to conform the pleadings to the proof provided at trial, by which time any of that tenant’s objections to the sufficiency of the petition on jurisdictional grounds had been deemed waived, and any prejudice had vanished with the time elapsed (see e.g. 433 W. Assoc. v Murdock, 276 AD2d 360 [2000]; Metropolitan Transp. Auth. v Cosmopolitan Aviation Corp., 99 AD2d at 768). Siedlecki, on the other hand, involved strict compliance with the service requirements of RPAPL 733. Those two cases are clearly distinguishable from this matter, because, here, tenant is timely objecting to the petition’s sufficiency at the onset of the proceeding, when a jurisdictional objection is preferred and dismissal is available. Not to mention that the insufficient petition caused prejudice to tenant who could not know the regulatory thicket involved with her tenancy or the availability of defenses.
As such, because landlord has failed to comply with an essential statutory requirement thereby prejudicing tenant (see RPAPL 741 [4]), landlord’s projected amendment to the petition under CPLR 3025 (b) is not available to correct the regulatory status of the premises at this time. Indeed, CPLR 3025 (b) requires that “[a]ny motion to amend or supplement pleadings shall be accompanied by the proposed amended or supplemental pleading clearly showing the changes or additions to be made to the pleading.” Here, landlord’s sur-cross motion to amend does not contain the proposed amended petition or show its modifications or changes as required by the statute. That failure appears to provide an independent basis for the denial of landlord’s sur-cross motion (see Sirohi v Lee, 222 AD2d 222, 223 [1995], lv dismissed in part and denied in part 88 NY2d 897 [1996]).
In accordance with the foregoing, landlord’s motion is denied as academic, and its sur-cross motion is denied; tenant’s motion *688 to dismiss the petition for failure to sufficiently state the regulatory status of the premises and follow CFR precepts, is granted, and the proceeding is hereby dismissed.