[839 NYS2d 62]

546 WEST 156TH STREET HDFC, Appellant, v LENISE SMALLS, Respondent, et al., Respondent.

First Department, June 26, 2007

8

**APPEARANCES OF COUNSEL**

*Edward Joseph Filemyr IV*, New York City, for appellant.

No appearance for Lenise Smalls, respondent.

**OPINION OF THE COURT**

Tom, J.P.

This Court is asked to decide whether the parties to a residential lease can, by private agreement, subject an apartment to regulation under the Rent Stabilization Law where the building was created as a not-for-profit housing cooperative under the Private Housing Finance Law and is statutorily exempt from rent stabilization.

Petitioner landlord is a housing development fund company, a cooperative incorporated in November 1988 under Private Housing Finance Law article XI and Business Corporation Law § 402 (Private Housing Finance Law § 573 [1] [a]). The subject building, located at 546 West 156th Street in the Borough of Manhattan, was previously owned by the City of New York and managed by the tenants under the Tenant Interim Lease program administered by the Department of Housing Preservation and Development. Petitioner purchased the building from the City in September 1989 following in rem tax foreclosure proceedings. Petitioner covenanted to operate the property as a housing project for persons or families of low income.

Respondent Lenise Smalls is the named tenant of apartment 10, which is the subject of the instant nonpayment proceeding. She has occupied apartment 10 with her two children since 1994 and previously resided in apartment 22, located in the same building. At the time her initial tenancy commenced in 1989, the building was still owned by the City of New York. It is

undisputed that respondent has neither purchased nor been extended an offer to purchase the shares allocated to her present apartment under the proprietary lease.

In a prior nonpayment proceeding commenced in March 1996, the subject apartment was identified as a rent-stabilized dwelling unit. The proceeding was resolved by a December 1996 stipulation providing that respondent would pay $3,871 in rent arrears and petitioner would perform certain repairs. The stipulation further provides:

> "Petitioner agrees to give respondent a preferential rent of $425 for the subject apartment, and to grant her tenancy pursuant to the Rent Stabilization Code of NYC, both to commence with a two-year rent stabilized lease effective 11/1/96. Petitioner must register legal rent based on $550 per month & indicate on registration preferential rent to Ms. Smalls."

Following expiration of the stipulated lease term, the parties renewed the lease in 1998 at $442 a month and in 2000 at $486 a month. Petitioner registered the unit as a rent-stabilized apartment and registered all rents with the Division of Housing and Community Renewal.

The present nonpayment proceeding was initiated during the lease term that commenced in February 2002, during which the rent was again set at $550 a month. The petition dated June 11, 2003 asserts that the tenancy is exempt from the Rent Stabilization Law because the premises are located in a building owned by a cooperative corporation operated for the charitable purpose of providing low-income housing. In her pro se answer, respondent alleged a rent overcharge and breach of the implied warranty of habitability. Thereafter, she brought the instant motion to amend her answer to include these counterclaims and for summary judgment dismissing the petition. Respondent contended that her tenancy is subject to the Rent Stabilization Law and asserted that "petitions which misstate the fundamental rent regulatory status of the premises at issue should be dismissed." Alternatively, she sought partial summary judgment as to the rent-stabilized status of her apartment.

In opposition, petitioner cross-moved to dismiss the counterclaims. Petitioner contended that by making the lease subject to the Rent Stabilization Law, the parties' stipulation necessarily incorporates provisions exempting from the law's coverage leaseholds in buildings operated as cooperative corporations or

for charitable purposes. Petitioner further argued that its use of rent stabilization renewal forms or lease riders does not foreclose a claim, made at the expiration of the lease term, that the premises are exempt from the provisions of the statute.

Civil Court agreed that the subject premises are exempt from the Rent Stabilization Law, holding that the parties' stipulation does not create a stabilized tenancy or give respondent renewal rights under the statute. In denying her motion, the court rejected respondent's proposition that the stipulation, having been so ordered by the court, confers rent stabilization rights in perpetuity, declining to accord collateral estoppel effect to petitioner's adherence to rent stabilization formalities. The court ruled that while the parties were bound by the stipulation, "that merely means that petitioner did not have the right to collect more than the agreed upon rent through the expiration of the last lease signed by the parties" (1 Misc 3d 906[A], 2003 NY Slip Op 51523[U], *3).* The court thereafter denied respondent's motion for reargument.

In reversing, Appellate Term unanimously held that the stipulation expressly confers rent stabilization status upon the tenancy, notwithstanding the statutory exemption for nonprofit cooperatives. While acknowledging that waiver or estoppel is insufficient to confer rights under a statutory rent regulatory scheme, the court found the stipulation to be enforceable, opining that nothing in the Rent Stabilization Law prohibits a landlord from granting statutory rights by contract. Thus, the court dismissed the petition because it "incorrectly alleges that the subject premises is [sic] not subject to rent regulation" (8 Misc 3d 135[A], 2005 NY Slip Op 51207[U], *1).

Respondent has not filed an appellate brief. However, in support of her motion, she argued that "[t]he facts as to the rent-regulatory status of the apartment are not in dispute and therefore partial summary judgment as to this issue of law is appropriate: that the apartment is covered by rent regulation."

Petitioner argues only that the building is exempt from rent stabilization by operation of law and that its errors in representing the premises as rent-stabilized in previous summary proceedings and in registering respondent's apartment with the Division of Housing and Community Renewal are insufficient to

---

* Civil Court also granted respondent's motion for leave to amend her answer to include counterclaims for rent overcharge and breach of the implied warranty of habitability. That ruling is not at issue on the appeal.

render the apartment rent-stabilized. Petitioner does not address whether the parties to a lease may, by contract, subject the premises to regulation under the Rent Stabilization Law.

Whatever might be said about petitioner's prior characterization of the premises, its settlement agreement with respondent is not attributable to inadvertence or mistake but clearly reflects an intent to assume a binding contractual obligation. Thus, as Appellate Term duly noted, the circumstances of this matter are not analogous to cases relied upon by petitioner in which an apartment was erroneously registered as stabilized (*see e.g. Ruiz v Chwatt Assoc.*, 247 AD2d 308 [1998]) or rent stabilization riders were attached to leases or rent stabilization forms were used to tender renewal leases (*see e.g. Heller v Middagh St. Assoc.*, 4 AD3d 332 [2004]).

As concerns the dismissal of the petition, a nonprofit cooperative corporation organized under Private Housing Finance Law article XI is statutorily exempt from rent stabilization (*see 512 E. 11th St. HDFC v Grimmet*, 181 AD2d 488, 488-489 [1992] [organized under General Business Law § 352-eeee]) both because it is a housing cooperative (Rent Stabilization Law [Administrative Code of City of NY] § 26-504 [a]) and because it is operated for charitable purposes (Rent Stabilization Code [9 NYCRR] § 2520.11 [j], [l]; *see Jerome Ave. Hous. Dev. Fund Corp. v King*, 147 Misc 2d 162, 163-164 [1990]). That the parties may have treated the premises as subject to rent stabilization does not defeat the statutory exclusion from regulation. "Such an exemption is not subject to waiver or equitable estoppel" (*512 E. 11th St.*, 181 AD2d at 489; *see also Gregory v Colonial DPC Corp. III*, 234 AD2d 419 [1996]). With respect to the contents of the petition, adequacy of notice in a landlord-tenant proceeding is governed by a standard of reasonableness under the circumstances; however, as this Court has noted, deliberate misrepresentation of the rent-stabilized status of a leasehold subjects a petition to strict construction as a matter of equity, subjecting the summary proceeding to dismissal (*Hughes v Lenox Hill Hosp.*, 226 AD2d 4, 18 [1996], *lv dismissed in part and denied in part* 90 NY2d 829 [1997]). Here, any perceived misstatement concerning whether the premises were subject to the Rent Stabilization Law resulted from the uncertainty surrounding the status of respondent's tenancy and cannot be ascribed to a venal motive (*cf. MSG Pomp Corp. v Doe*, 185 AD2d 798, 799 [1992] [misrepresentation of ownership and rent-regulated status of the premises]). Thus, it was error to dismiss the petition.

In determining whether a dwelling unit is subject to rent regulation, what the parties think might be its status or even what they agree to be its status is not dispositive; what is controlling is whether the premises meet the statutory criteria for protection under the applicable regulatory statute. The record does not disclose the methodology used by petitioner to set apartment rents, whether for tenants under proprietary leases or nonpurchasing tenants such as respondent (Private Housing Finance Law § 573 [3] [c]). The only documentation of respondent's tenancy is the stipulated agreement purporting "to grant her tenancy pursuant to the Rent Stabilization Code of NYC." In the absence of a statutory tenancy, there is nothing in the record to indicate that respondent is more than a month-to-month tenant. The subject agreement to treat respondent's apartment as rent-stabilized does not confer protection under the Rent Stabilization Law in contravention of the explicit statutory exemption for housing accommodations organized as a cooperative corporation or operated for charitable purposes. We agree with Civil Court that the parties' stipulated agreement is enforceable only to the extent that it sets the rental amount and only for the duration of any lease signed by the parties (*see Matter of Missionary Sisters of Sacred Heart, Ill. v New York State Div. of Hous. & Community Renewal*, 283 AD2d 284, 287 [2001] [construing Rent Stabilization Code (9 NYCRR) § 2521.2 (b)]).

Our decision in *Kent v Bedford Apts. Co.* (237 AD2d 140 [1997]) does not warrant a contrary result. It should be emphasized that *Kent* involved a tenant's unsuccessful rent overcharge action, in which the only issue before this Court was the propriety of the monthly rental amount she agreed to pay to the landlord. On this issue, we found it dispositive that the stipulation was entered into *before* the plaintiff attained the status of a rent-stabilized tenant. We merely held that the plaintiff could not invoke the Rent Stabilization Law to bar her waiver of the right to contest the rental amount because, at the time she executed the stipulated settlement, she had not yet been established as a rent-stabilized tenant. Thus, the tenant was bound by the stipulation agreement and obligated to pay the rent provided therein.

Appellate Term vastly overstated the holding of *Kent* in concluding that any stipulation purporting to confer rent stabilization status upon a tenant is binding. Neither the

propriety of the tenant's status nor the enforceability of the portion of the stipulation granting her rent-stabilized status was challenged by either party. Clearly, the plaintiff raised no objection to the statutory tenancy bestowed upon her; rather, she made every attempt to further avail herself of the protection afforded by the Rent Stabilization Law. Nor is there any indication that the landlord, in defending the action, sought to avoid its agreement with the plaintiff. Thus, the question of whether the parties could, by agreement, confer rent stabilization status upon the tenant was never in issue.

This Court has held that parties to a rent-stabilized lease may not "contract out of rent stabilization," even where their agreement bestows obvious advantages on the tenant (*Drucker v Mauro*, 30 AD3d 37, 42 [2006]). The issue raised by this appeal is that suggested, but neither raised nor addressed, in *Kent*—whether the parties to a tenancy not otherwise subject to rent stabilization may contract into the statutory scheme.

It is appropriate to observe that rent stabilization is a creation of the Legislature (*see* McKinney's Uncons Laws of NY § 8601 *et seq*. [Local Emergency Housing Rent Control Act, as added by L 1962, ch 21, § 1, as amended]). So, too, is the particular form of cooperative ownership utilized by a housing development fund company (HDFC) such as petitioner (Private Housing Finance Law § 572 [9]; § 573), the stated purpose of which is to enable various nonprofit associations to organize as HDFCs, inter alia:

> "to build or rehabilitate housing for low income families . . .
>
> "to enable such companies to participate more effectively in existing municipal, state and federal assistance programs . . .
>
> "to coordinate activities aided under existing municipal, state and federal programs with other public and private actions . . .
>
> "[and] to provide assistance for existing not-for-profit housing companies by providing advances from the housing development fund to facilitate the rehabilitation or construction of housing for low income families" (Private Housing Finance Law § 571).

An HDFC project is to be "operated exclusively for the benefit of the persons or families who are entitled to occupancy in such housing project by reason of ownership of shares in such corporation" (Private Housing Finance Law § 573 [4]). Maximum rentals are fixed in the City of New York by the Department of Housing Preservation and Development (Private Housing Finance Law § 572 [14]; § 576 [1] [a]) which, pursuant to agreement with the HDFC, is authorized to regulate "rents, profits, dividends and disposition of property or franchises" (Private Housing Finance Law § 573 [3] [c]). Any profit is to "be used for capital improvements or to reduce rentals" (Private Housing Finance Law § 576 [1] [c]), and no part of income or earnings may "inure to the benefit or profit of any private individual, firm, corporation or association" (Private Housing Finance Law § 573 [3] [b]).

It is apparent that the Legislature has provided a framework for the operation of an HDFC to accomplish the legislative purpose in enacting the Private Housing Finance Law. It is equally apparent that the objective of providing housing to low income families is not shared by the Rent Stabilization Law, application of which extends to tenants of far more substantial means. Where, as here, the Legislature has subjected premises to a particular form of organization and regulation, the courts are obligated to apply the pertinent statute so as to promote its purpose. Alternatively stated, the courts may not permit parties to a regulated tenancy to evade the provisions governing that tenancy, thereby subverting legislative intent. The primary rule of statutory construction is to interpret an enactment so as to give effect to the intent of the Legislature (*Thoreson v Penthouse Intl.*, 179 AD2d 29, 33 [1992], *affd* 80 NY2d 490 [1992]; McKinney's Cons Laws of NY, Book 1, Statutes § 92 [a]). Such intent is not promoted by permitting the parties to transform a tenancy granted under the terms of one statute into a tenancy governed by the provisions of an entirely different statute.

Accordingly, the order of the Appellate Term of the Supreme Court of the State of New York, First Department, entered August 10, 2005, which reversed an order of Civil Court, New York County (Gerald Lebovits, J.), entered on or about October 17, 2003, denying respondent's motion to dismiss the petition, should be reversed, on the law, without costs, the petition reinstated and the matter remanded to Civil Court for further proceedings.

FRIEDMAN, SULLIVAN, NARDELLI and CATTERSON, JJ., concur.

Order of the Appellate Term of the Supreme Court of the State of New York, First Department, entered August 10, 2005, reversed, on the law, without costs, the petition reinstated and the matter remanded to Civil Court for further proceedings.