■ ROBERT STECHER, Appellant, v 85TH ESTATES COMPANY et al., Respondents. [843 NYS2d 6]—

Order, Supreme Court, New York County (Leland DeGrasse, J.), entered August 29, 2005, which insofar as appealed from as limited by the briefs, granted defendants' motion to dismiss the second and third causes of action for breach of contract, reversed, on the law, without costs, the motion denied and such causes of action reinstated.

The motion court erroneously dismissed the second and third causes of action, which it stated are based on a purported 1992 agreement, as time-barred. Such causes, however, are based on defendants' refusal to offer plaintiff a renewal lease when his original lease expired on January 31, 2004. It was this refusal that was the breach that triggered the running of the statute of limitations. Thus, this action, which was commenced some four months later, was timely commenced. We also find no merit to defendants' claim that the March 4, 1992 letter bars the present action.

With regard to the separate dissents, plaintiff has not ap-

pealed the dismissal of his first cause of action for specific performance of the alleged 1992 agreement, the same relief sought by the plaintiff in *Drucker v Mauro* (30 AD3d 37 [2006], *appeal dismissed* 7 NY3d 844 [2006]), and an injunction barring defendants from maintaining a holdover proceeding against him on the ground that the apartment is no longer his primary residence. Thus, it is not the subject of this appeal and has been relegated to Civil Court for determination. Nor does he appeal from the dismissal of the fourth cause of action for recovery of an alleged $50,000 illegal rent overcharge. Rather, he limits his appeal to the dismissal of the second and third causes of action. Nevertheless, the dissenters, although agreeing that plaintiff may assert his purported right to a renewal lease in defense of the pending holdover proceeding where the enforceability of the parties' agreement, an issue raised for the first time on appeal, will be decided, both seek to prejudge the issue.

In any event, even though a violation of public policy may be raised for the first time on appeal and defendants have raised the issue of unenforceability on that ground in their brief, this case is readily distinguishable from *Drucker v Mauro* since, as already noted, plaintiff's cause of action for specific performance of the alleged agreement has been relegated to Civil Court for determination and is not the subject of this appeal. There is also no claim that plaintiff obtained anything more than a valid rent stabilized lease and neither party seeks reformation or rescission of the alleged contract, which was freely entered into and acquiesced in for more than 10 years before being finally challenged, as the tenants sought to do in *Schultz v 400 Coop. Corp.* (292 AD2d 16 [2002]). Rather, plaintiff, in his second and third causes of action, is seeking damages for defendants' refusal to renew or extend his lease of the subject rent stabilized apartment. As noted by this Court in *390 W. End Assoc. v Baron* (274 AD2d 330, 333 [2000]), even where a lease is void, a tenant may pursue a claim with respect to profits obtained by a landlord in violation of the Rent Stabilization Law. Concur—Andrias, Marlow and Malone, JJ.

Tom, J.P., dissents in separate memorandum as follows: This is an action for breach of an illegal oral contract to issue plaintiff a rent-stabilized lease and lease renewals, in perpetuity. The complaint filed in April 2004 asserts a right to a renewal lease under a tenancy created by a purported 1992 verbal agreement with defendant landlord's principal, Mark Perlbinder. Plaintiff allegedly paid $50,000 in consideration of "his understanding and agreement that he would have the right to remain in the apartment for as long as he cared to rent it," in apparent disre-

gard of whether the apartment was to be used as his primary residence. Defendant alleges that plaintiff maintains his primary residence in Florida.

Defendant previously brought a holdover proceeding on nonprimary residence grounds, which had been pending in Civil Court for two months when plaintiff commenced this action alleging breach of the parol agreement and seeking specific performance and monetary damages of $500,000. Plaintiff's first cause of action seeks specific performance and a permanent injunction against his eviction. The second and third causes of action allege breach of the 1992 oral agreement and seek monetary damages of $500,000 against defendants,[1] respectively, for failing to offer plaintiff a renewal lease in January 2004 and for refusing to extend the term of the lease.[2] The fourth cause of action seeks recovery of the $50,000 paid by plaintiff in 1992, asserting that such payment constitutes an illegal rent overcharge.

In the pending Civil Court holdover proceeding to recover possession of the subject dwelling unit, defendant alleged that plaintiff does not use the premises as his primary residence and, apparently, never has. However denominated, the present action seeks to impose upon defendant the obligation to continue the statutory tenancy indefinitely. Because the right to lease renewal can be adjudicated in the Civil Court proceeding and because it is dispositive of the asserted breach of contract, the complaint was properly dismissed on the ground that there is another action pending (CPLR 3211 [a] [4]).[3]

On appeal, plaintiff maintains only that his second and third causes of action should not have been dismissed as untimely under the six-year statute of limitations applicable to breach of contract (CPLR 213) because the breach of the purported parol contract occurred when defendant failed to renew the lease in January 2004. However, because the contract bestows a rent-regulated lease on an individual who is not qualified for rent stabilization protection in exchange for an illegal payment of $50,000, it is unenforceable in the courts as a matter of public policy; thus, what are denominated in the complaint as

1. Plaintiff does not disclose how damages are calculated.

2. The distinction between these purported causes of action is not immediately apparent.

3. The "illegal overcharge" alleged in the fourth cause of action, which is not before us, can also be adjudicated in Civil Court. Thus, it was unnecessary for Supreme Court to rule on this issue. The court was correct, however, in stating that the action on the overpayment, alleged by plaintiff to have been made in 1992, is time-barred (CPLR 213-a).

plaintiff's second and third causes of action seek damages that are unrecoverable.[4] Accordingly, I dissent and would affirm the order dismissing the complaint.

The parties do not dispute that plaintiff paid $50,000 for a rent-stabilized apartment that plaintiff was not obligated to maintain as his primary residence. Thus, the contract sought to be enforced by plaintiff is in clear violation of the Rent Stabilization Law and Code in two material respects. First, the payment of $50,000 to obtain the lease constitutes excessive rent (see *Estro Chem. Co. v Falk*, 303 NY 83, 87 [1951] ["The obtaining of excessive rents strikes at the very purpose of the act"]). By waiving the statutory protection against excessive rents, the contract contravenes Rent Stabilization Code (9 NYCRR) § 2520.13, which expressly prohibits a tenant from waiving any benefit bestowed under rent stabilization, rendering it statutorily void and unenforceable as a matter of public policy (see *Drucker v Mauro*, 30 AD3d 37, 41 [2006], *lv dismissed* 7 NY3d 844 [2006]). Second, the agreement is calculated to evade requirements for obtaining statutory protection (see *546 W. 156th St. HDFC v Smalls*, 43 AD3d 7 [2007]), particularly, that the apartment be used as the tenant's primary residence (Rent Stabilization Law of 1969 [Administrative Code of City of NY] § 26-504 [a] [1] [f]; NY City Rent and Rehabilitation Law [Administrative Code] § 26-403 [e] [2] [i] [10]; *see Friesch-Groningsche Hypotheekbank Realty Credit Corp. v Slabakis*, 215 AD2d 154, 155 [1995]).

The majority fails to acknowledge the illegality of the agreement, reasoning that because the parties did not seek to rescind or reform the contract,[5] the issue is not before us. With respect to enforceability, it is irrelevant that, the parties "freely entered into and acquiesced in [the contract] for more than 10 years," as the majority asserts. Rather, it is axiomatic that a party cannot seek to recover damages on an agreement that violates public policy and is statutorily prohibited (*Drucker*, 30 AD3d at 41; *see Austin Instrument v Loral Corp.*, 29 NY2d 124, 130 [1971] [contract voidable for economic duress]; *Jones Lang Wootton*

---

**4.** This presumes that merely asserting a right to monetary damages in the alternative to specific performance serves to create distinct causes of action, the remedy sought in all instances being predicated on the selfsame breach of contract.

**5.** While the complaint does not expressly seek rescission, the fourth cause of action seeks to recover the amount paid as consideration. Granting such relief would effect rescission by placing plaintiff in status quo ante, thereby vitiating the contract (see *Curtis Props. Corp. v Greif Cos.*, 212 AD2d 259, 265 [1995] ["the promises of both parties to a bilateral contract must be supported by consideration"]).

*USA v LeBoeuf, Lamb, Greene & MacRae*, 243 AD2d 168, 182 [1998], *lv dismissed* 92 NY2d 962 [1998] [settlement agreement voided as offensive to antisubrogation rule]). However, plaintiff entered into the asserted oral agreement of his own volition and, the record suggests, with the advice of counsel, availing himself of the benefit of his bargain for more than a decade. Thus, he is estopped to contest his willing participation in the arrangement (*see Schultz v 400 Coop. Corp.*, 292 AD2d 16, 20 [2002]).

It is immaterial that neither party previously raised the issue of illegality of the contract. As this Court has noted, "There is a long-standing policy of refusing to assist in the enforcement of agreements that are injurious to the public" (*Abright v Shapiro*, 214 AD2d 496, 496 [1995]). As we explained in *Miltenberg & Samton v Mallor* (1 AD2d 458, 461 [1956]): "As has been frequently said, the courts [*sic*], in refusing to enforce these agreements, does so, not because it desires to relieve one of the parties to such an agreement from the obligation that he assumes, but because of the fact that the making of such an agreement is an injury to the public, and that the only method by which the law can prevent such agreements from being made is to refuse to enforce them. In such a case a court will leave the parties as it found them. It is well-settled law that parties to a fraudulent or illegal transaction who are *in pari delicto* may not invoke judicial aid to undo the consequences of their illegal acts" (citations and internal quotation marks omitted).

Moreover, plaintiff has not submitted any evidence to prove the terms of his alleged verbal agreement with defendant's principal (*see Cobble Hill Nursing Home v Henry & Warren Corp.*, 74 NY2d 475, 482 [1989], *cert denied* 498 US 816 [1990] [definiteness of contract essential to enforcement, and proof of its terms "is particularly significant where specific performance is sought"]). "The party seeking to enforce a contract bears the burden to establish that a binding agreement was made and to prove the terms of the contract" (*Allied Sheet Metal Works v Kerby Saunders, Inc.*, 206 AD2d 166, 169 [1994]; *Paz v Singer Co.*, 151 AD2d 234, 235 [1989]). The only proof of the agreement between the parties is its part performance. However, plaintiff does not explain how such part performance can be distinguished from adherence to statutory requirements governing the rent-stabilized tenancy so as to be deemed " ' "acts of part performance which go along with, relate to, and confirm the agreement" ' " (*see Eden Temporary Servs. v House of Excellence*, 270 AD2d 66, 67 [2000], quoting *Bright Radio Labs. v Coastal Commercial Corp.*, 4 AD2d 491, 494 [1957], *affd* 4 NY2d

1021 [1958], quoting *Wheeler v Reynolds*, 66 NY 227, 232 [1876]). Finally, plaintiff does not allege that the parol agreement contemplates recovery of extraordinary damages beyond the usual and customary remedy of directing the issuance of a renewal lease (*see 1009 Second Ave. Assoc. v New York City Off-Track Betting Corp.*, 248 AD2d 106, 108 [1998], *lv dismissed* 92 NY2d 947 [1998]).

This action is nothing more than a landlord-tenant dispute involving defendant's obligation to offer plaintiff a renewal lease, which is an issue governed by the Rent Stabilization Law and Code. The Court of Appeals has made clear that "Civil Court has jurisdiction of landlord tenant disputes (*see* CCA 204) and when it can decide the dispute, as in this case, it is desirable that it do so" (*Post v 120 E. End Ave. Corp.*, 62 NY2d 19, 28 [1984] [*Yellowstone* injunction], citing *Lun Far Co. v Aylesbury Assoc.*, 40 AD2d 794 [1972]). As *Post* notes, "If the tenant is unable to obtain complete relief in Civil Court, then the jurisdiction of Supreme Court is still available" (*id.*, citing *Wilen v Harridge House Assoc.*, 94 AD2d 123 [1983] [*Yellowstone* injunction]). Neither the parties nor the majority offer any reason why the issues raised by this controversy cannot be resolved in the summary proceeding before Civil Court. Since plaintiff asserts no basis for injunctive or declaratory relief available only in Supreme Court, this action is merely an artifice to prevent the dispute from being decided in the designated forum (*Cox v J.D. Realty Assoc.*, 217 AD2d 179, 180 [1995], citing NY Const, art VI, § 15 [b]; CCA 204, 110).

Plaintiff's claim that the oral agreement was breached by the failure to renew (or extend) his lease involves only a single breach of contract. The several alternative remedies of injunction and monetary damages that he seeks all arise from the claim that he is entitled to indefinite renewal of his lease and are not severable (*see Matter of Cine-Source, Inc. v Burrows*, 180 AD2d 592, 594 [1992]; *Goldberg v Eastern Brewing Co.*, 136 App Div 692, 693 [1910]). Merely because counsel might draft a complaint to restate a single claim under various theories of contract—and even tort—does not serve to create distinct causes of action, as this Court has repeatedly held (*see e.g. McMahan & Co. v Bass*, 250 AD2d 460, 462 [1998], *lv denied and dismissed* 92 NY2d 1013 [1998]; *Megaris Furs v Gimbel Bros.*, 172 AD2d 209, 211 [1991]).

Plaintiff may assert his purported contract right to renewal of his lease in defense to the holdover proceeding pending in Civil Court. Because the Housing Part must decide whether defendant is obligated to renew plaintiff's lease, determination of this

issue will have collateral estoppel effect (*Buechel v Bain*, 97 NY2d 295, 304 [2001], *cert denied* 535 US 1096 [2002] [parties bound by prior determination of their contract rights despite their failure to litigate them]; *see also Schwartzreich v E.P.C. Carting Co.*, 246 AD2d 439, 441 [1998] [res judicata]). Permitting multiple actions to go forward predicated on the same breach of contract (failure to offer plaintiff a renewal lease) offends the rule that a cause of action may not be split to advance different theories of recovery or to pursue different forms of relief (*see id.*; *Miller v Vanderlip*, 285 NY 116, 125 [1941]) and creates the potential for conflicting rulings on an identical issue (*see World Point Trading PTE. v Credito Italiano*, 225 AD2d 153, 161 [1996]; *Bank of Tokyo-Mitsubishi, Ltd., N.Y. Branch v Kvaerner a.s.*, 243 AD2d 1, 9 [1998] [arbitration]). As stated in *Perry v Dickerson* (85 NY 345, 347-348 [1881]), "There can be but one recovery for an injury from a single wrong, however numerous the items of damage may be, and but one action for a single breach of a contract."

In view of this analysis, it is unnecessary to reach defendant's argument that this action is barred by the terms of a 1992 written release, in which plaintiff agreed to hold defendant harmless for any adverse consequences resulting from actions taken by him to obtain the subject leasehold. It need only be observed that the existence of this document hardly strengthens plaintiff's case for recovery of damages against defendant.

Accordingly, the order dismissing the complaint should be affirmed.

McGuire, J., dissents in a separate memorandum as follows: Pursuant to a lease executed in January 1992, plaintiff leased a rent stabilized apartment from defendant 85th Estates Company (the Company), the net lessee of the building in which the apartment is located. According to plaintiff, defendant Perlbinder, a principal of the Company, demanded that plaintiff pay $50,000 as a condition to obtaining the lease. The $50,000 payment would also serve as consideration for defendants' promise continually to renew the lease for additional terms. Plaintiff allegedly paid this $50,000 "fee" to Perlbinder in early February 1992, thereby entering into the alleged agreement which is at the center of this appeal.

By a notice dated September 16, 2003, the Company notified plaintiff that it did not intend to renew plaintiff's previously renewed lease that was to expire on January 31, 2004. The Company claimed that it would not renew the lease because plaintiff was not using the apartment as his primary residence. In February 2004, the Company commenced a nonprimary resi-

dence holdover proceeding in the Civil Court of the City of New York, seeking possession of the premises and use and occupancy from plaintiff for the period of the holdover.

On April 30, 2004, plaintiff commenced this action against defendants asserting four causes of action. The first cause of action sought to enjoin the Company from prosecuting the holdover proceeding and specific performance of the agreement, i.e., defendants' promise to renew the lease. The second and third causes of action, which are materially indistinguishable, sought damages for defendants' breach of the agreement, i.e., defendants' failure to renew the lease. The fourth cause of action sought damages based upon defendants' violation of the rent stabilization laws prohibiting excessive rents and overcharges. Defendants moved to dismiss the complaint pursuant to CPLR 3211, asserting that plaintiff's cause of action seeking specific performance of the agreement should be litigated in the holdover proceeding and that the remaining causes of action seeking damages were time-barred. Supreme Court granted the motion in its entirety and dismissed the complaint. Plaintiff appeals, as limited by his brief, from those portions of the order which dismissed his second and third causes of action.

I agree with the majority's tacit conclusion that the second and third causes of action cannot be addressed by the Civil Court in the context of the holdover proceeding. "The only issue before the court [in a holdover proceeding] is the *right of possession as of the time of the commencement of the proceeding*" (2 Dolan, Rasch's Landlord and Tenant—Summary Proceedings § 30:3, at 419 [4th ed] ["Tenant Wrongfully Holding Over"] [emphasis added], citing *Jones v Gianferante*, 305 NY 135, 139 [1953] ["(A) summary proceeding under (former) article 83 of the Civil Practice Act is of purely possessory character, and the only issue before the court was as to the right of possession]).[1] While the court in the holdover proceeding can also award the landlord any rent that may be unpaid and, for a period of occupancy during which no rent is due, the fair value of use and occupancy of the premises (RPAPL 741 [5]), it has no jurisdiction over any other claims between the parties (*see Allyn v Markowitz*, 83 Misc 2d 250, 252 [Rockland County Ct 1975] ["In a special proceeding pursuant to (RPAPL) article 7 . . . , a court has no jurisdiction to adjudicate a monetary claim (by lessor against lessee for damage to the

---

1. RPAPL 711 was derived from, among other things, former article 83 of the Civil Practice Act. Since the RPAPL did not change the Civil Practice Act in this respect, *Jones* remains valid precedent (*see* 2 Dolan, Rasch's Landlord and Tenant—Summary Proceedings § 29:7, at 406 n 36 [4th ed]).

demised premises)"]; *Carver v Crowe & Co., Inc.*, 202 Misc 899, 899 [App Term, 1st Dept 1952] [civil court in summary proceeding "had no jurisdiction to adjudicate as to the alleged indebtedness of the tenant to the landlords for fuel, which was no part of the rental obligation"]; 2 Dolan, Rasch's Landlord and Tenant—Summary Proceedings § 29:7, at 406-407 [4th ed]; 89 NY Jur 2d, Real Property—Possessory Actions § 3; *see also Romea v Heiberger & Assoc.*, 163 F3d 111, 116 [2d Cir 1998] ["The landlord may also recover unpaid rent owed by the tenant in an Article 7 proceeding. But it can only do this as a matter ancillary to the court's jurisdiction to hear a claim to recover possession"]; *see generally Ross Realty v V & A Fabricators, Inc.*, 42 AD3d 246 [2d Dept 2007]).

While the issue of whether the apartment is plaintiff's primary residence must be adjudicated in the holdover proceeding in Civil Court, that court is without jurisdiction to adjudicate plaintiff's claims seeking damages for the alleged breach of the agreement, the only claims before us on this appeal (i.e., the second and third causes of action). Civil Court can only pass on the issue of whether the apartment is plaintiff's primary residence. Although Civil Court's finding on that issue would preclude the parties from relitigating it in Supreme Court, such finding by Civil Court would not have any impact on plaintiff's action in Supreme Court for damages stemming from the alleged breach of the agreement. For this reason, there is no impermissible splitting of a single claim.[2]

In any event, the agreement is unenforceable on the ground

---

2. I agree with Justice Tom's assertion that plaintiff "may assert his purported contract right to [perpetual] renewal of his lease in defense to the holdover proceeding," however meritless that defense may be (see infra). That such a defense may be raised in the holdover proceeding, however, does not compel the conclusion that plaintiff's causes of action to recover damages for the alleged breach of the agreement must be raised in the same proceeding. As this Court stated in a related context, "the 'narrow doctrine' prohibiting the splitting of a cause of action (*see Murray, Hollander, Sullivan & Bass v HEM Research*, 111 AD2d 63, 66 [1985]) does not preclude the tenant from seeking damages in an action separate from that in which he had sought to be restored to possession" (*Rodriguez v 1414-1422 Ogden Ave. Realty Corp.*, 304 AD2d 400, 401 [2003]; *see Wood v Chenango County Natl. Bank & Trust Co.*, 282 App Div 283, 286 [1953] ["There should be one action only to settle the rights of the parties, *when all rights can be properly determined in a single action*" (emphasis added, internal quotation marks and citation omitted)]; *Gilbert v Village of Larchmont*, 280 App Div 1000 [1952] [same]). The majority asserts that I "seek to prejudge" the issue of plaintiff's potential defense in the holdover proceeding based on his alleged right, under the agreement, to perpetual renewal of the lease. To the contrary, however, I am judging in this action an issue of law that is properly before us: whether the agreement is void as a matter of public policy.

that it is void as a matter of public policy. Initially, while the majority correctly notes that defendants did not raise this issue before Supreme Court, we may nevertheless consider it (*Matter of Niagara Wheatfield Adm'rs Assn. [Niagara Wheatfield Cent. School Dist.]*, 44 NY2d 68, 72 [1978] ["Where a contract provision is arguably void as against public policy, that issue may be raised for the first time at the Appellate Division by a party, or by the court on its own motion"]; *Matter of Maiore v City of Buffalo*, 78 AD2d 979 [1980]; *see People v Knowles*, 88 NY2d 763 [1996]).

Turning to the substance of this argument, the public policy underlying the Rent Stabilization Law "is to provide an adequate supply of affordable housing in the City of New York" (*Drucker v Mauro*, 30 AD3d 37, 40 [2006], *appeal dismissed* 7 NY3d 844 [2006]), "so as to ameliorate . . . dislocations and risk of widespread lack of suitable dwellings" (*390 W. End Assoc. v Harel*, 298 AD2d 11, 15 [2002] [internal quotation marks omitted]). Thus, "[i]t is well settled that the parties to a lease governing a rent-stabilized apartment cannot, by agreement, incorporate terms that compromise the integrity and enforcement of the Rent Stabilization Law. Any lease provision that subverts a protection afforded by the rent stabilization scheme is not merely voidable, but void" (*Drucker v Mauro*, 30 AD3d at 39 [citations omitted]).

In *Drucker*, the parties entered into a lease and rider pursuant to which the plaintiffs rented an apartment from the defendant. The lease and rider included provisions setting the rent at a rate in excess of that established by the Division of Housing and Community Renewal (DHCR) and entitling the plaintiffs to perpetual renewal of the lease. The pertinent provisions of the rider represented the settlement of a dispute regarding the defendant's failure timely to offer the plaintiffs a renewal lease and claims involving the rent and repairs and renovations. In response to the defendant's efforts to obtain luxury decontrol of the apartment, the plaintiffs commenced an action seeking a declaration that the lease and rider were enforceable and to enjoin the defendant from applying for luxury decontrol of the apartment.

In reversing an order of Supreme Court declaring that the lease and rider were enforceable, this Court determined that the lease and rider were unenforceable and void as a matter of public policy. The Court, citing the well-established rule that landlords and tenants are prohibited from entering into agreements that effectively deregulate rent stabilized apartments, found that the plaintiffs waived impermissibly the protections

afforded by the Rent Stabilization Code because the rider provided for rent that exceeded the amount established by DHCR and allowed for perpetual, unconditional renewal of the lease. The Court reasoned that judicial recognition and enforcement of such agreements could "adversely affect both the legal rent and the regulated status of . . . dwelling unit[s] for future occupants" (*id.* at 40) and concomitantly undermine and "erode the entire statutory scheme of the Rent Stabilization Law" (*id.* at 42).

While the agreement at issue here did not impose upon plaintiff monthly rental obligations in excess of the legal regulated amount, it did involve a one-time $50,000 payment that served as both a condition to obtaining the lease and consideration for the promise continually to renew the lease for additional terms. The agreement violates the public policy underlying the Rent Stabilization Law because it purports to allow plaintiff to rent the apartment regardless of whether it serves as his primary residence (*see Rocky 116 v Weston*, 284 AD2d 139 [2001]; *Park Towers S. Co. v Universal Attractions*, 274 AD2d 312 [2000]; *see also Thornton v Baron*, 5 NY3d 175 [2005]; *Draper v Georgia Props.*, 94 NY2d 809 [1999]; *390 W. End Assoc. v Harel, supra*; *390 W. End Assoc. v Baron*, 274 AD2d 330 [2000]).[3] Thus, the agreement is void and plaintiff's right to remain in possession of the apartment, i.e., right to renewal of the lease, hinges on the outcome of the nonprimary residence holdover proceeding. Since the entire agreement is

---

**3.** The agreement may violate public policy for a separate reason. Some portion of the $50,000 payment—whatever that portion may be—was paid to obtain the lease and would appear to be, in substance, additional rent (*see Munro v Syracuse, Lake Shore & N. R.R. Co.*, 200 NY 224, 232 [1910] ["Rent is the compensation for the use of land"]; 1 Dolan, Rasch's Landlord and Tenant—Summary Proceedings § 12:1, at 523-524 [4th ed] ["Rent"] ["Rent is the compensation to be paid by a tenant for the use and occupation of land, or for the right thereto" (footnotes omitted)]; Black's Law Dictionary 1322 [8th ed 2004] [defining "rent" as "(c)onsideration paid . . . for the use or occupancy of property"]). Under one possible approach, whether the agreement resulted in rent charges exceeding the lawful rent would depend upon both the amount of the monthly rent plaintiff actually was paying relative to the maximum monthly rent that lawfully could be charged and whether there is some coherent basis for considering some portion of the $50,000 payment to represent additional payments of monthly rent. Alternatively, the inherent difficulties of making such calculations might support a prophylactic rule invalidating such a lump-sum payment on the ground that it threatens a core purpose of the legislative scheme (*see Drucker*, 30 AD3d at 40, quoting *Estro Chem. Co. v Falk*, 303 NY 83, 87 [1951] ["The obtaining of excessive rents strikes at the very purpose of the act"]). Happily, I need not wrestle with these issues given my conclusion that the agreement violates public policy for an independent reason.

void, plaintiff's second and third causes of action, both of which seek damages for breach of the agreement, were properly dismissed.

*390 W. End Assoc. v Baron (supra)*, cited by the majority, affords no support for its position. In *Baron*, plaintiff landlord commenced an action against defendant tenant seeking a declaration that the defendant's apartment was exempt from rent regulation because the defendant was not using the unit as his primary residence. The parties entered into a consent judgment pursuant to which the defendant acknowledged that the apartment was not his primary residence, that the unit was exempt from the Rent Stabilization Law, and that any subsequent lease between the parties would similarly be exempted from rent stabilization. The parties then entered into a lease that provided for automatic renewals and allowed the defendant to sublease the unit to any person who did not use it as his or her primary residence. Rent for the unit was set at an amount several times the rent-stabilized rate. The defendant subsequently subleased the unit, at a rent in excess of the rent the defendant was charged under the prime lease, to a couple, the Thorntons, who did use the unit as their primary residence. Three years after they entered into the sublease, the Thorntons brought a rent overcharge action against the defendant on the ground that they were charged and paid rent well in excess of the legal rent as established by the Rent Stabilization Law. The plaintiff, which was not a party to the overcharge action, moved to vacate the consent judgment and rescind the prime lease so that it could offer the Thorntons a rent-stabilized lease.

This Court, reversing an order of Supreme Court denying the motion, determined that the prime lease was invalid since it violated the public policy underpinning the Rent Stabilization Law. Specifically, the Court noted that the lease, which permitted the defendant to lease the unit on the condition that he not use it as his primary residence, had the effect of deregulating the unit. For this reason, the Court granted the plaintiff's motion to vacate the consent judgment. In addition, because it was "concerned that plaintiff may have benefited unjustly at the Thorntons' expense" (*id.* at 333), it did so "without prejudice to the assertion of any claims among the parties and/or the Thornton tenants with respect to profits obtained in violation of the Rent Stabilization Law" (*id.*). Thus, the Court did nothing more than acknowledge that rent paid by the Thorntons over the legal rent could potentially be recovered.

I would not, of course, want to prejudge either the merits of the claim or the statute of limitations issue that would arise,

but it may be that plaintiff, like the Thorntons in *Baron*, has a viable claim to recover all or some portion of the $50,000 payment. Plaintiff's second and third causes of action, however, do not seek to recover the $50,000 payment. Indeed, plaintiff's fourth cause of action seeks that relief and, as the majority notes, plaintiff does not "appeal from the dismissal of the fourth cause of action for recovery of an alleged $50,000 illegal rent overcharge." The second and third causes of action—the only claims before us—seek damages stemming from the breach of the agreement. In sum, *Baron* provides no support for the majority's conclusion that plaintiff's second and third causes of action are viable.

Accordingly, I would affirm the order insofar as appealed from.