City of Norwich Hous. Auth. v Peterson (2024 NY Slip Op 51868(U))

[*1]

City of Norwich Hous. Auth. v Peterson

2024 NY Slip Op 51868(U)

Decided on October 3, 2024

City Court Of Norwich, Chenango County

Genute, J.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on October 3, 2024
City Court of Norwich, Chenango County

City of Norwich Housing Authority, Petitioner/Landlord

against
Virginia Peterson, Respondent/Tenant

Docket No. LT-0127-24/NO

Petition/Landlord, by James P. Chamberlain, Esq.
Respondent/Tenant by Evan Heaney, Esq. (Legal Services of Central New York, Inc.)

Michael J. Genute, J.

Background
Petitioner/Landlord brings this holdover action by way of its Notice of Petition and Petition filed with this court on June 4, 2024. According to the Petition, the landlord terminated the tenant's lease on May 31, 2024, and the tenant remained in possession of the premises. Attached to the Notice of Petition is a Notice of Termination of Lease, providing that the Landlord "has elected to and does hereby terminate, on March 31, 2024, the tenancy of Virginia Peterson . . ." The reason for the termination, according to the notice of termination, is that the tenant violated 2 section of the lease (Paragraph 12 [j and n] requiring that,
(j) The tenant shall be obligated to act and cause household members . . . to act in a manner that will not disturb other resident's peaceful enjoyment of their accommodation . . . (n) Act in a cooperative manner with neighbors and (landlord) staff. To refrain from . . . acting or speaking in an abusive, loud or threatening manner towards neighbors and the (landlord's) staff . . .
The notice of termination alleges that the tenant violated the aforementioned provisions of the lease agreement by acts committed in January and February of 2024, noting that the tenant was provided with a 10-day notice to cure on January 8, January 18, and January 27, 2024, regarding her behaviors toward other tenants and landlord staff. It further alleges that the tenant was present for a meeting with Tamara Cobb and Kari Crannell on February 2, 2024, regarding the various warnings and three 10-day notices of lease violations she received, and that Ms. Cobb and Ms. Crannell repeatedly urged the tenant to be nice to people. It further added that should the tenant's behaviors continue, her lease would be terminated. According to the notice of termination, the tenant acknowledged that she understood the communications from the meeting. The termination notice proceeded to document that the tenant was again harassing tenants and guests of tenants on February 23 and February 25, 2024.
About two thirds down the notice of termination, the paragraph beginning with "you are [*2]further notified", provides that the tenant is "required to quit and vacate the aforesaid leasehold premises not later May 31, 2024. . ."
The notice of termination also included notice of the landlord's grievance process, should the tenant disagree with her "lease termination and the reasons therefore." There was no evidence that the tenant ever availed herself to this process and it was never raised by either party. 
The matter was noticed to be heard on June 25, 2024, at which time the matter was adjourned for further proceedings to July 12, with both parties' consent and agreement. The tenant filed an Answer with the court on July 12, 2024, and the landlord, without objection, was offered an opportunity to respond. By letter dated July 19, 2024, the landlord submitted a brief response to the tenant's Answer.
In its Verified Answer, the tenant sought dismissal of the petition on the following grounds:
• By accepting rent after March 31, 2024, being the lease termination date initially provided in the notice of termination, the landlord created a new month to month tenancy. (see, RPL § 232-c).
• The landlord's failure to plead that the property in question is public housing.
• The lack of a clear and unequivocal lease end date in the notice of termination.
• The lack of any pleading demonstrating good cause for termination of the lease. (see, 24 C.F.R. 966.4[1]).
• Failure to provide the tenant with a proper opportunity to cure. (see, RPAPL § 753[4]).
On the day of the hearing, being July 25, the Court denied the tenant's application to dismiss the petition, noting the following:
• The March 31, 2024, date was a typographical error, tenant failed to allege any prejudice, and there appeared to be no dispute as to the end date of the lease, which was May 31, 2024.
• The tenant failed to plead or otherwise suggest any prejudice in the landlord's failure to plead that the property in question is public housing. (see, 546 W. 156th St. HDFC v Smalls, 839 NYS2d 62, 66 [1st Dept 2007]; 215-219 Union Ave. Ass'n v Miller, 511 NYS2d 489, 491 [NY City Ct 1987]).
• The tenant failed to plead that any equivocation in the petition or notice of termination was prejudicial to the tenant.
• There was no prejudice pled or suffered by the tenant regarding the March 31 versus the May 31, 2024, lease end date.
• Good cause was alleged based upon the multiple 10-day notices served upon the tenant, which were referenced in the notice of termination.
• The tenant could be deemed an objectionable tenant, and therefore the landlord was not required to provide 30-days to cure. (see, RPAPL § 753[3]).
Nevertheless, the court suggested that it would be open to reconsideration of the above issues following a hearing, but felt it best and more appropriate to proceed with the hearing at that point time, as the matter had already been adjourned on two prior occasions.
The landlord's sole witness was Kari Crannell, while the tenant testified on her own behalf. The parties were offered an opportunity to submit a post-hearing submission addressing the various legal issues that were argued or, in the alternative, an additional opportunity to reach a settlement in the matter, to be scheduled for an appearance on August 6, 2024, to place any potential agreement on the record. The tenant filed her post-hearing brief on July 30, and the landlord telephonically advised the court on or about August 6, 2024, that it was resting on the merits.

 Testimony and Evidence
The facts are not much in dispute. On January 3, 2024, management for the landlord spoke with the tenant concerning harassing behavior in the form of excessive texts to other tenants, at which point the tenant was advised to stop contacting those other residents. This was followed up by a 10-day notice to the tenant, dated January 8, 2024, to stop harassing other residents of the landlord. It further advised that "if you can't be civil, then don't talk with them." Ten days later, another complaint was made where another resident was crying because of the harassing behavior of the tenant, noting that they could not go anywhere because they were afraid of the tenant. This resulted in a second 10-day notice with similar, if not exact language to the January 8, 10-day notice. Management hoped that this second 10-day notice would get the tenant's attention and send a clear message.
A few days following the second 10-day notice (January 18) and during an inspection of the tenant's apartment, the tenant complained to Ms. Crannell about her dresser drawer not working properly and asking that maintenance repair it. Ms. Crannell explained that they would have maintenance take a look at it as a courtesy as it was the tenant's personal property, but that emergencies and more pressing matters would be handled as a priority. On January 26, 2024, the tenant approached the office again inquiring about her dresser drawer being addressed, at which time Ms. Crannell stepped out from the back to again explain that it would be looked at as a courtesy when time permitted. The tenant escalated the matter by being disrespectful to staff before leaving and then called the office about an hour later being combative with staff in such a profound manner that Ms. Crannell, from her office in the back, could hear the tenant yelling at staff through the phone. Ms. Crannell went to the tenant's apartment to discuss the matter and explain that the tenant's attitude towards staff was inappropriate, which prompted the tenant to begin yelling at Ms. Crannell, claiming that the maintenance person was a liar before throwing her lap desk onto the floor and continuing to yell at the witness.
On January 27, a third 10-day notice was provided to the tenant with similar language as the other two. Ms. Crannell further notified the tenant to appear in the office on February 3, to discuss her behavior with Ms. Cobb. At the meeting, with her counsellor and sister present, the tenant denied harassing other tenants or otherwise acting inappropriate, though did not deny the specific texts and messages that were at issue or the behaviors toward the landlord's staff. It was explained to the tenant that she had three (3) 10-day notices and that if her lease is terminated due to her behaviors, she would have to vacate her apartment. The tenant acknowledged that she understood.
In mid-February, an additional conflict arose with two of the tenants who previously complained about the respondent's behavior, where they complained of being harassed by phone and text by the tenant. According to Ms. Crannell, the tenant's behavior continued even after [*3]being told to stop with her behavior. This situation even escalated to the point of criminal charges of Harassment in the 2nd degree being filed against the tenant. As a result, management issued a notice of termination on February 26, 2024, following permission being granted by the landlord's board of directors. According to the notice of termination, the last day of the lease was to be March 31, 2024, and the tenant was to vacate by May 31. With this being an issue raised by the tenant, the landlord explained that the "March" date was a typo, and that it should have been "May" 31. In this regard, the landlord testified that the respondent was clear about the date being May 31, as they did have a couple of communications in this regard and the tenant clearly understood the date to be May.
As a result of the criminal charges against the tenant, orders of protection were issued for each of the two complainant tenants. Since the February incident and receipt of the notice of termination, not to mention the two orders of protection, there have been no further incidents by the tenant.
The tenant did not contradict any of the evidence presented by the landlord, indicating her intent to stop her behaviors. The tenant did testify that her doctor had put her on "stress" medication three (3) days after the January 27, 10-day notice that was delivered to her, also confirming that it was a new medication. There was no evidence to otherwise document any change in her medications, but the court will take judicial notice that it often takes some time, frequently up to two or three weeks, for a new medication to have an effect on one's moods and behaviors.
Currently, the tenant indicated that she had her items packed and in boxes in her apartment, and that she understood that her lease was being terminated at the end of May. She did not represent any misunderstanding about the termination notice in terms of the March versus May 31 date. The tenant acknowledged her understanding from the notice and her communications with management that the lease was being terminated on May 31. The last communication between management and the tenant was shortly after the termination notice was served, with management making sure the tenant understood its terms.

 Analysis
"When a landlord-tenant relationship exists, the landlord may maintain a special proceeding to remove a tenant if, as relevant here, the tenant continues in possession of any portion of the premises after the expiration of his term . . ." (Matter of Cat Hollow Estates, Inc. v Savoia, 849 NYS2d 111 [3d Dept 2007], citing RPAPL 711[1][2]). Additionally, "summary landlord-tenant proceedings are special proceedings governed entirely by statute and it is well established that there must be strict compliance with the statutory requirements to give the court jurisdiction." (Id., citations and internal punctuation omitted).
Furthermore, "(t)o terminate a tenancy in federally subsidized housing, federal regulations and due process both require adequate notice detailing the grounds for termination." (Metro Plaza Apartments, Inc. v Buchanan, 162 NYS3d 543 [3d Dept 2022] [citation and internal brackets omitted]). And "(n)o termination of a lease for a subsidized unit shall be valid unless it is in accordance with the provisions of 24 CFR 247.4." (Id., citing 24 CFR 247.3[a]).
The tenant places significant reliance upon Metro Plaza Apartments in her post-hearing brief, arguing that the matter should be dismissed due to a deficient "notice of termination." (see also, 24 CFR § 247.4; 24 CFR § 966.4[e][8]). In Metro Plaza Apartments, the reason for [*4]termination was that the tenant violated the landlord's lease and bullying policy. The Appellate Division, Third Department determined that "the notice of termination was deficient, as it did not set forth the factual predicates underlying the alleged violation of the lease terms, instead merely paraphrasing the lease and the underlying regulation. (Id., citations omitted). It further observed that, "(n)o specific incident is described in the notice, nor are any specific facts." (Id.)
The matter now before the court is very comparable to Metro Plaza Apartments. In particular, the termination notice failed to describe any "specific incident" or "any specific facts" as a reason for the termination. Instead, the notice of termination merely references that the tenant was "warned on various occasions about being nice to other tenants and not acting in an abusive or threatening manner . . . while interacting with other tenants and (the landlord's) staff." Further, the reference to the warnings provided to the tenant fail to even include dates of her alleged violations, instead merely referencing the 10-day notices she received. While the final violation that led to the termination notice offered specific dates of February 23 and February 25, 2024, it offers nothing more in terms of specific details, except to note that "you were again harassing other tenants and guests of tenants."
The 10-day notices, which were not included in the landlord's notice of petition and petition, offer little more. With the exception of the January 27, 2024, 10-day notice, which specified the tenant's actions towards Ms. Crannell, the other 10-day notices offered similar language as the "notice of termination." In the January 8, 2024, 10-day notice, the tenant is advised that she "was warned by phone and in person . . . on January 3, 2024, to stop harassing other tenants." The January 18, 2024, 10-day notice offered equally general language, advising that "the office received another complaint on January 18, 2024, that you are continuing to harass other tenants." In both of those notices, the tenant is advised to,
. . . stop harassing other tenants immediately. If you are having issues with another tenant and cannot be civil or polite when engaging with that person, then you should not speak to them.
The January 17, 2024, 10-day notice does document the specific incident with Ms. Crannell, but of course that is a different set of events which, instead of applying to other tenants, applied specifically to Ms. Crannell, even though testimony elicited during the hearing reflected additional behaviors towards office staff. The court certainly acknowledges that the specific lease provision allegedly violated involves both other tenants and the landlord's staff. However, the only specific notice received by the respondent pertained to the one-time incident involving Ms. Crannell.
Returning back to the specific notice of termination attached to the petition, there is absolutely no such specificity. Moreover, at one point Ms. Crannell even testified that the tenant denied certain behaviors, while noting that those were not the behaviors complained of. It seems that this is the point of the ruling in Metro Plaza Apartments. Pursuant to 24 CFR § 247.4, a tenant in federally subsidized housing needs to have specific written notice of the conduct which is being complained about them in order to adequately correct their behaviors, actions, or omissions. It is arguable that the lack of specificity in two of the 10-day notices left the tenant not understanding the specific conduct she was supposed to avoid. And the notice of termination clearly offers no further clarity to the issue, leaving the tenant and her attorney unable to adequately formulate a defense to the allegations presented. Moreover, there is nothing [*5]additional in the petition concerning the tenant's behavior, merely limiting its language to the date her lease ended and the fact that she still resided in the apartment.
As noted in Metro Plaza Apartments, "(t)he regulatory standard of requiring enough specificity so as to enable the tenant to prepare a defense demands more detail as to the nature of the asserted misconduct." (Id., citing 24 CFR 247.4 [a] [2] [internal citations omitted]). The Metro Plaza Apartments court additionally noted that the defect could not be cured by greater elaboration in the petition. (Id., citation omitted). In the matter at bar, this is not even arguable, as the petition failed to elaborate further concerning the alleged violations. (see, Marshall v Simmons, 134 NYS3d 617, 619 [Civ Ct 2020]. As "(t)he service of a proper notice of termination was a condition precedent to the termination of the tenancy under the lease" (162 NYS3d 543, citation and internal quotations omitted), the petition must be dismissed. 

Decision
For all of the foregoing reasons, the petition is hereby dismissed. The foregoing constitutes the Decision and Order of the Court.
Dated: October 3, 2024
Hon. Michael J. Genute
Norwich City Court Judge